THE PEOPLE ex rel. James A. Wheeler et al. Appellees, vs.
H. J. RUST et al. Appellants.

*Opinion filed April 21, 1920.*

1. QUO WARRANTO—*default of defendants to an information ad-mits only the truth of the facts alleged.* The default of defendants to an information in the nature of *quo warranto* to test the legality of the organization of a school district admits the truth of the facts alleged but not that the People are entitled to relief prayed.

2. SCHOOLS—*the special act of 1869 organizing Pekin School District is still in force.* The special act of 1869 creating the Pekin School District is not repealed either by the Community High School act of 1917 or by section 2 of the curative act of 1919 validating the organization of community high school districts, and hence the territory comprising the Pekin School District can not be joined with other territory in the organization of a community high school district.

APPEAL from the Circuit Court of Tazewell county; the Hon. T. N. GREEN, Judge, presiding.

JESSE BLACK, JR., and PRETTYMAN, VELDE & PRETTY-MAN, for appellants.

EDWARD E. BLACK, State's Attorney, (DAILEY, MILLER, McCORMICK & RADLEY, of counsel,) for appellees.

Per CURIAM: On February 17, 1919, which was during the February term of the Tazewell county circuit court, leave was granted the State's attorney to file on behalf of the relators an information in the nature of *quo warranto* against H. J. Rust, F. C. Gale, W. G. Fair, A. VanHorne and D. F. Velde, constituting the board of education of the Pekin Community High School District, to test the legality of the organization of said district. The information filed on said day consisted of one count, which was in the usual form of information in such cases and alleged the district had never been legally organized, and called upon the defendants to answer by what warrant they claimed to

exercise the rights, powers and authority of a board of education of said district. Summons was ordered issued returnable February 27. On March 10, 1919, by leave of court three additional counts to the information were filed. April 12, after defendants had been ruled to plead and had failed to do so, they were defaulted and judgment was entered finding all the material allegations of each and every count of the information were true and that the district had not been legally organized. The district was declared dissolved, defendants were ousted from their offices as members of the board of education and were adjudged to pay the costs, and each of them was fined one dollar.

The additional counts set up the proceedings had in the organization of the Pekin Community High School District and the irregularities which it is alleged rendered the organization invalid. The first additional count charges that seventy-one inhabitants of school district No. 108 (which is coterminous with the city of Pekin) petitioned the county superintendent of schools of Tazewell county to call an election for the purpose of voting for or against the establishment of a high school for the benefit of the inhabitants in the territory included in districts 101, 102, 108, 77, 82, 70, 71, 98 and 97 in Tazewell county and districts 40 and 44 in Peoria county; that the county superintendent of schools granted the petition May 2, 1918, and thereafter called an election to be held in the territory described in the petition for the purpose of voting for or against the proposition to form the territory described into a community high school district and to establish a high school therein, which election was set for and held on May 20, 1918; that notice was given of said election and the ballots cast thereat were returned to the county superintendent; that the proposition was carried by a majority of the votes in the territory but not by a majority vote in each of the districts; that the county superintendent found and declared that the proposition had carried and declared said school district to be Com-

munity High School District No. 303, Tazewell county, Illinois, and that the board of education, when elected and organized, should be a body politic and corporate by the name "Board of Education of Pekin High School District No. 303, Tazewell county, Illinois." Said count further alleges the territory described in the petition is not made up of parts of several districts but consists of the whole of the districts mentioned; that the petition should have been filed with the trustees of schools of the townships in which the respective districts were located; that notice of the election should have been given by the township treasurers, who should have canvassed the returns as provided by sections 85 and 87 of the act entitled "An act to establish and maintain a system of free schools," and that an affirmative vote in favor of the proposition was required in each of said districts.

The second additional count alleges that by special act of the legislature of March 11, 1869, which was declared to be a public law, all the territory within the limits of the city of Pekin, according to its then or future boundaries, was created a school district, to be known as the Pekin School District, and it was placed under the exclusive management and control of a board of school inspectors, who should have power to erect, rent or purchase suitable school buildings and grounds, to maintain schools for all the children of said city, and generally the management and control of said school district and schools therein. Said act provided that no act of the legislature then in force or that might thereafter be enacted for the establishment of a State system of public schools should be construed to repeal, alter or change any of its provisions, "unless such acts shall specifically provide for such repeal, alteration or change." Said count further averred that ever since the passage of that act the schools in district No. 108, which is coterminous with the city of Pekin, have been under the management and control of a board of school inspectors; that said act

is now in force and there is no authority of law for join-
ing said district No. 108 in a community high school district.

The third additional count, after setting up the proceed-
ings had in the organization of said community high school
district substantially as set out in the first and second ad-
ditional counts, charges that the Community High School
law of 1917 is unconstitutional and invalid.

It will be seen the information itself set out the title
of defendants, so that it was unnecessary for them to plead
their title.   It was not disputed that the information cor-
rectly set up the proceedings to organize the district, and
if it showed an illegal organization the people were entitled
to judgment.   The three grounds upon which the organiza-
tion of the district was attacked were:  (1) That the peti-
tion for organization of the district should have been filed
with the trustees of schools of the respective townships in
which the districts were located, and the township treasur-
ers should have given notice of the election and canvassed
the returns, as provided by sections 85 and 87 of the gen-
eral School law;  (2) by the act of 1869 the city of Pekin,
according to its then or future boundaries, was made a
school district and the schools therein were placed under
the exclusive control and management of a board of school
inspectors; that said act of 1869 had never been repealed
and the city of Pekin school district could not be joined with
other districts in the organization of a high school district;
(3) that the Community High School act, as amended 1917,
delegates legislative authority to the county superintendent
of schools, and is unconstitutional and void.   No questions
of fact being in dispute, only questions of law were raised
for decision, and these questions were as fully raised by
the information as they would have been by pleas.   The
default of defendants admitted the truth of the facts al-
leged but not that the people were entitled to the relief
prayed.  *Board of Supervisors of Madison County* v. *Smith,*
95 Ill. 328; *Monarch Brewing Co.* v. *Wolford,* 179 id. 252.

After the original information was filed this court decided in an opinion filed February 20, 1919, that section 89 of the School law, as amended in 1917, providing for the establishment of community high school districts, violated article 3 of the constitution, in that it delegated legislative power to the county superintendent of schools, and for that reason quashed the record of the organization of a community high school district. (*Kenyon* v. *Moore,* 287 Ill. 233.) After the decision in that case was filed the additional counts to the information were filed.

It is conceded by counsel for appellants that under the third additional count the judgment of the circuit court in this case, when rendered April 12, 1919, was correct. It is denied it was correct by reason of anything alleged in the other counts, and it is contended the organization of the district as a community high school district was validated by "An act to legalize the organization of certain high school districts," approved and in force April 30, 1919, (Laws of 1919, p. 907,) and that this appeal should be decided under the law in force at this time and not according to the law in force at the time the judgment was rendered. Said curative act in full is as follows: .

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That in all cases where a majority of the inhabitants of any compact and contiguous territory voting on the proposition, having voted at any election called for the purpose by the county superintendent of schools, in favor of the organization of such territory into a community high school district, and when at a subsequent election similarly called and held a board of education has been chosen for such district, each such election is hereby made legal and valid and such territory is hereby declared legally and validly organized and established as a high school district, and a valid and existing school district and body politic and corporate of the State for the purpose of establishing and maintaining a high

school.   The board of education acting for each such district is hereby declared to be the duly constituted corporate authority thereof, and each such board shall hereafter consist of five members, and shall be elected and organized in the same manner and have the powers and discharge the duties of boards of education of school districts as provided by sections 86, 126 and 127 of an act entitled, 'An act to establish and maintain a system of free schools,' approved and in force June 12, 1909, as said sections now exist or may from time to time be amended.

"Sec. 2. All acts and proceedings heretofore done, had or performed, by each such district and the persons from time to time elected and acting as the board of education thereof, such as are authorized to be done, had or performed by school districts or boards of education thereof by the general school laws of the State, are hereby declared to be legal and valid in all respects, anything in any special charter to the contrary notwithstanding.

"Sec. 3. Whenever there are two such districts which overlap in territory, that district which shall have first established and now continues to conduct a high school, is hereby validated and confirmed.

"Sec. 4. All pending actions attacking the organization of districts coming under the provisions of this act shall abate.

"Sec. 5. The invalidity of any section of this act shall not affect the remainder thereof.

"Sec. 6. Whereas, an emergency exists, therefore this act shall be in full force and effect from and after its passage and approval."·

Appellees contend the above act cannot apply to this district for the reason that it does not repeal the special act of 1869 establishing the city of Pekin a school district and placing the management of the schools therein under the exclusive management and control of a board of school inspectors.  Appellants say the act of 1869 was intended to be

292 — 27

and was repealed by section 2 of the curative act, which declared districts valid, "anything in any special charter to the contrary notwithstanding."

It is insisted by appellants that the quoted clause of section 2 was adopted to meet the identical situation presented in this case; that if the Community High School law of 1917 did not apply to the Pekin school district the legislature had the power to make it apply, and that numerous decisions hold where there is no constitutional prohibition the legislature may validate by a curative act any proceeding which it might have authorized in advance. It is claimed that with respect to the curative or validating act of 1919 the situation is precisely similar to the situation presented by the curative act of 1917 validating high school districts organized under the act of 1911, which validating act was sustained. The legislature had the power to repeal the Pekin special school charter, which the act of 1869 declared to be a public law, but it did not do so when it passed the Community High School law of 1917, for the act of 1869 provided that it should not be repealed, altered or changed by any subsequent act unless such subsequent act specifically provided for such repeal, alteration or change. Unless the curative act of 1919 repealed the act of 1869 it is still in force, and if it is in force it is conceded Pekin School District No. 108 could not be joined with other territory in the organization of a community high school district.

The curative act in force April 30, 1919, was passed after we had held section 89 of the Community High School law unconstitutional, and purported to validate all districts where a majority of the inhabitants of any compact and contiguous territory had voted in favor of the organization of such territory into a community high school district at an election called by the county superintendent of schools for that purpose, and where, at a subsequent election called and held, a board of education for such district had been elected. Section 2 declares all acts heretofore performed

by each such district, and the persons therein acting as the board of education, to be legal and valid, "anything in any special charter to the contrary notwithstanding." No information is afforded us by the record as to what special object was intended to be accomplished by the legislature by the use of those words except the words themselves. Do they "specifically provide" for the repeal of the Pekin school charter of 1869? We think the question must be answered in the negative. The act of 1869 consists of several sections, constituting a complete system or code for the exclusive management and control of the schools in the city of Pekin by a board of school inspectors. They were given authority to build, lease or purchase school houses and necessary grounds for schools; to furnish the school houses with necessary furniture and apparatus; to maintain public schools for all the children of the city and cause to be submitted to the voters of the city, annually, the question of taxation for school purposes; to prescribe the qualifications of teachers and fix their compensation; to divide the city into school districts from time to time; to establish schools of different grades and make regulations for the admission of pupils into them; to appoint a board in each school district, to be known as district directors, and prescribe their duties and powers; to appoint such other officers as they deem best for the well being of the schools, and generally to have all the powers and authority for the management of the schools and school funds of the city, with power to make such rules and ordinances as may be necessary to carry into effect their duties and authority in perfecting a good system of instruction.

To sustain the organization of the district here involved would require holding that the last clause of section 2 of the curative act above quoted repealed the entire act of 1869, abolishing the board of school inspectors and the entire management and control of the schools of the city of Pekin as provided by that act. In view of the language of the act

of 1869 that no act thereafter enacted for creating and establishing a State system of free schools shall be construed to in any manner repeal, alter or change said act unless the subsequent act specifically provides for such alteration or repeal, we would not be warranted in holding the last clause of section 2 of the curative act repealed the act of 1869. It does not specifically do so, and we cannot infer from the language a legislative intent that it should have that effect. In that view of the case it is unnecessary to discuss the questions raised by the first and third additional counts of the information.

     The judgment is affirmed.        *Judgment affirmed.*

---

(No. 13202.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY KLEIN, Plaintiff in Error.

*Opinion filed April 21, 1920.*

  1. CRIMINAL LAW—*when right to discharge for want of warrant is waived.* One arrested by a police officer without a warrant waives his right to be discharged, where, instead of making a motion for his discharge on the day a warrant is issued and served, he moves for a continuance.