(No. 13834.—Decree affirmed.)

THE BOARD OF EDUCATION OF·DISTRICT NO. 108 OF TAZE-
   WELL COUNTY *et al.* Appellees, *vs.* HENRY W. TOEN-
   NIGS, County Treasurer, Appellant.

*Opinion filed April 21, 1921.*

   1. SCHOOLS—*fact that discontinued district was organized under
invalid law does not preclude distribution of assets.* The fact that
a community high school district was organized under the invalid
law of 1917, to which the curative act did not apply because of the
provisions of a special school charter, does not preclude the distri-
bution of the discontinued district's assets under section 92 of the
School law as amended in 1917, as said statute in its application is
not restricted to districts attempted to be .organized under a valid
law but applies as well to districts which are organized under an
invalid law and are neither *de jure* nor *de facto.*

   2. SAME—*taxes voluntarily paid upon a levy by an illegal com-
munity high school district cannot be recovered back.* A tax volun-
tarily paid pursuant to a levy by a community high school district
organized under the invalid act of 1917 cannot be recovered back
even though the district is discontinued because it is one to which
the curative act. did not apply, as the tax-payer is supposed to know
the law and cannot recover a tax payment which he is not com-
pelled to make even though the law under which the tax was lev-
ied is unconstitutional.

   3. SAME—*when costs of suit should be paid from discontinued
district's funds—appeal.* In a suit under section 92 of the School
law by an underlying school district against the county treasurer
and tax-payers to have the assets of a discontinued high school
district applied in paying obligations which the discontinued dis-
trict owed to the complainant the costs are properly paid out of
the fund in the hands of the treasurer raised by collecting taxes
levied by the discontinued district, and the costs of an appeal by
the county treasurer. should be paid out of the same fund.

   APPEAL from the Circuit Court of. Tazewell county;
the Hon. JOHN M. NIEHAUS, Judge, presiding.

   E. E. BLACK, State's Attorney, (W. B. COONEY, of
counsel,) for appellant.

   PRETTYMAN, VELDE & PRETTYMAN, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This appeal is prosecuted by the county treasurer of Tazewell county, one of the defendants to a bill in chancery filed by appellees, to reverse a decree granting the relief prayed in the bill.

The facts, about which there is no dispute, as disclosed by the record, are, that in May, 1918, Pekin Community High School District No. 303 was declared organized and established by a vote of the people as a community high school district. The district embraced all the city of Pekin, in Tazewell county, certain school districts in said county outside the city of Pekin and two school districts in Peoria county. A board of education was elected for said community high school district. Prior to that time the public schools of the city of Pekin were maintained and conducted by a board of school inspectors under a special charter granted by the legislature in 1869. The board of education of the community high school district contracted with the Pekin board of school inspectors for the purchase of the high school building and grounds in Pekin for $120,000, payable in installments on May 1, 1919, August 1, 1919, and September 1, 1920. The community high school board levied a tax of $35,000 in July, 1918, and made another levy for the same amount in July, 1919. The board had no money, and in order to raise money to meet its obligations it issued anticipation warrants to the board of inspectors of the Pekin school district under an agreement that the board of inspectors would issue its anticipation warrants to the community high school board for an equal amount, upon which the board could procure the money to carry on the school. Under that arrangement between the two boards of education the community high school board issued anticipation warrants to the board of inspectors aggregating $38,200 and the board of inspectors issued its anticipation warrants to the community high school board

aggregating the same amount, which the latter board cashed and expended the money in conducting the high school, which it began operating in September, 1918. In May, 1919, the special school charter of the city of Pekin was by a vote of the people surrendered and abrogated, and the board of school inspectors was succeeded by a board of education under the provisions of the general School law of the State, which latter board is the principal complainant in the bill. Before the tax levied for the year 1918 was delinquent, an information in *quo warranto* was filed to oust the board and declare the district illegal. The information was filed February 17, 1919. The community high school district was organized under the act of 1917, which was held unconstitutional by this court in a decision filed February 20, 1919. (*Kenyon* v. *Moore,* 287 Ill. 233.) On April 12, 1919, judgment of ouster was entered against the community high school board by the circuit court of Tazewell county, and the board prosecuted an appeal to this court. May 1, 1919, and while that appeal was pending, the legislature passed an act with the emergency clause, legalizing community high school districts organized under the act of 1917. This court in a decision filed April 21, 1920, affirmed the decision of the circuit court of Tazewell county, and held that because of the provisions of the Pekin special school charter the validating act did not apply to the Pekin community high school district. (*People* v. *Rust,* 292 Ill. 412.) After that decision was filed the community high school board ceased to conduct the school, and it was thereafter, until the end of the school year, conducted by the complainant board. There was paid to appellant, the county treasurer of Tazewell county, of the taxes levied for the year 1918, $22,196.92, and of the taxes levied for the year 1919, $15,717.17, aggregating $37,914.09, and the treasurer of Peoria county collected of the taxes levied for said two years $68.06. On account of the litigation affecting the validity of the district the county treasurers re-

fused to pay out said tax money on the obligations of the community high school district incurred while operating the schools prior to the decision of this court, April 21, 1920, unless ordered to do so by a court of competent jurisdiction. The anticipation warrants held and owned by the complainant board exceed the aggregate amount of the taxes collected by the two county treasurers. There are also some other outstanding obligations of the community high school district, the exact amount of which and the persons to whom they are owing not being determined by the decree.

The decree finds that the board of school inspectors, the predecessor of the complainant board, had paid full value for the anticipation warrants and that they are now held and owned by the complainant board; that said warrants and other obligations of the community high school district exceed the total tax in the hands of the treasurers of Tazewell and Peoria counties; that no legal steps were taken to enforce payment of the taxes in any legal sense; that they were not paid under protest; that the money obtained by the community high school district on its obligations was expended for the purpose for which the tax was levied and collected and the consideration therefor had not failed, and that the funds in the hands of the county treasurers were impressed with a trust for the payment of said obligations and ought to be applied in payment and satisfaction thereof; that the tax was voluntarily paid and those who paid it were not entitled to it. It was ordered that the cause be referred to the master in chancery to itemize the obligations incurred by the community high school board and report the testimony with his conclusions. The costs were ordered paid out of the fund and the balance held subject to the order of the court, to be applied to the payment of the obligations of the community high school district.

The complainants in the bill are the board of education of district No. 108, which is the Pekin district, and its treasurer. The tax in controversy was paid by more than

fifteen hundred persons, a large number of whom paid only a few cents. Fifteen of those who paid larger sums were made defendants as representatives of all the tax-payers, and leave was given all tax-payers who desired to become defendants to do so and to answer the bill. Only two tax-payers answered the bill, but they did not join in the appeal, which is prosecuted by the county treasurer of Tazewell county alone.

The suit was brought under the provisions of section 92 of chapter 122 of Hurd's Statutes of 1917. That section, as amended in 1917, provides for the discontinuance of any township or community high school district by vote of the people or order of any court of competent jurisdiction, and in part reads: "If two-thirds of the ballots cast at said election shall be in favor of discontinuing the high school, the county superintendent of schools shall direct the high school board of education to discharge all outstanding obligations, to distribute the remainder of the assets of the high school district to the underlying school districts and parts of districts in proportion to the assessed valuation of all the property of such school districts and parts of districts. * * * When a high school shall be discontinued by order of any court of competent jurisdiction the assets of said high school district shall be distributed in the manner provided by this section." As the section was originally enacted it related only to discontinuance of districts by vote. In 1917 the provision was added as to the distribution of assets in case a district is discontinued either by vote or by order of court.

Appellant contends that as the law under which the community high school district was organized was unconstitutional the proceedings to organize it were null and void and the funds in the hands of the county treasurers were not assets or property of the district and not subject to the payment of obligations incurred by the board of education of the community high school district. It is undoubtedly true,

as argued, that there being no valid law under which the district could be organized it never was a municipal corporation *de jure* or *de facto*, but that does not, in our opinion, control the decision of this case. The statute as amended in 1917 requires, where a high school district is discontinued by order of a court of competent jurisdiction, that its assets shall be first applied to the discharge of its outstanding obligations and the remainder distributed to the underlying school districts and parts of districts in proportion to the assessed valuation of all the property of such school districts and parts of districts. There is no authority for the annulment or discontinuance of a high school district by an order of court except in a proceeding challenging the validity of the organization. The statute referred to is not restricted in its application to districts attempted to be organized under a valid law but applies as well to districts organized under a statute that may subsequently be held unconstitutional. The amendment was added after the decision in *People* v. *Weis,* 275 Ill. 581, holding the act of 1911 unconstitutional, and appears to have been made to meet just such a situation as this. The tax levies here made by the community high school board were not valid and binding on the tax-payers, but the taxes were voluntarily paid, not under compulsion or protest, and the money received on the anticipation warrants issued by the board was spent in the conduct and operation of the high school during a period for which no other tax was levied for that purpose. During that time the people of the district had the benefit of the school. It is not claimed by appellant that the legislature had no power or authority to enact section 92 referred to, but that the statute does not apply to a case of this character. We have already indicated our view to the contrary.

It is contended by appellant that a tax is an enforced contribution of persons and property levied by authority of law, (*Jack* v. *Weiennett,* 115 Ill. 105; *Loeber* v. *Leininger,*

175 id. 484;) and from that premise it is argued that the tax levied by the community high school board and paid to the county treasurers was not voluntarily paid by the tax-payers. It is also contended the tax was paid under a mistake of fact; that it was a legal tax which the tax-payers were bound to pay, in either of which events the money belongs to the tax-payers and cannot be applied to the discharge of the obligations of the community high school district. This record shows that after the case of *Kenyon* v. *Moore, supra,* was decided by this court, in February, 1919, wherein the Community High School law under which the district in question was organized was declared invalid, there were certain meetings held, resolutions adopted and publications made in two or three newspapers of large circulation in that community advising the public and tax-payers interested of the predicament in which their high school had been placed due to the law being declared invalid, and recommending to all tax-payers in the district that they pay their respective community high school taxes levied, regardless of the law being invalid, the purpose being that the children of the district, ninety per cent of whom lived in the city of Pekin, might not be deprived of a part of their high school education at that time. Some community high school taxes levied were not paid, the tax-payers refusing to pay such tax having followed the course provided by law, and their objections to said tax were ultimately sustained after this court's decision in the *Rust case, supra.* The record also shows that no warrants were issued to enforce the payment of personal property taxes collectible with the taxes for either of the years 1918 or 1919. Those tax-payers refusing to pay the high school tax received tax receipts less the amount of the community high school tax. There is also no evidence in the record showing any case of payment where the tax-payer paid the tax under protest. Some refused to pay the tax, and all were notified their property would be sold, after which

statements, or similar ones in substance, some tax-payers paid their taxes while others did not.

Appellant contends that as collector, feeling it his duty to warn all the tax-payers of the consequences of their failure to pay the tax, he made certain statements as previously stated in substance, and that the tax-payers relying on such statements were coerced into paying the tax and therefore the payments were not voluntarily made. As we read this record we think the payments made were from a legal viewpoint voluntarily paid. That this is so seems conclusively settled by *Yates* v. *Royal Ins. Co.* 200 Ill. 202, and authorities there cited. We quote a brief extract from the opinion: "The mere fact that the act under which the money was paid was unconstitutional, and the tax for that reason illegally laid, is not sufficient to authorize an action to recover back the amount paid. This principle has received the assent of the courts and law writers generally. Mr. Cooley, in his work on Taxation, (2d ed. p. 809,) says: 'That a tax voluntarily paid cannot be recovered back the authorities are generally agreed, and it is immaterial in such a case that the tax has been illegally laid or even that the law under which it was laid was unconstitutional. The principle is an ancient one in the common law and is of general application. Every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make he cannot afterwards assign his ignorance of the law as the reason why the State should furnish him with legal remedies to recover it back.'"

It is admitted by both parties that the court below correctly ordered the costs paid out of the fund in the hands of the treasurers, and that the same order ought to be made by this court, whatever its decision may be on the merits. We are of opinion that is just and proper, and the decree of the circuit court is affirmed and the costs of this appeal ordered paid out of said fund.    *Decree affirmed.*