(No. 1999— )

THE INDEPENDENT EASTERN TORPEDO COMPANY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 11, 1936.*

Claimant, pro se.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

Claimant is an Ohio corporation, and filed its claim herein on October 12th, 1932 seeking a refund of $50.00, being the amount of the franchise tax paid by it for the year commencing July 1st, 1932.

The rights of the parties hereto are governed by the provisions of "An Act in Relation to Corporations for Pecuniary Profit," approved June 28th, 1919, as amended, commonly known as The General Corporation Act; being the law in force at the time of the transaction involved herein. Under the terms of such law all foreign corporations doing business in this State were required to make a report in writing to the Secretary of State, between the 1st day of February and the 1st day of March of each year, and pay a franchise tax which was assessed upon the basis of such report. The franchise tax was due and payable the following July 1st, but did not become delinquent until July 31st, and was for the year commencing on the first day of July in which it was due, and ending on the 30th day of June next thereafter.

Under date of May 7th, 1932 the Secretary of State forwarded a statement to claimant advising that under the pro-

visions of the General Corporation Act of this State claimant owed the State a franchise tax of $50.00, and that the same was due and payable on the 1st day of July of that year.

Under date of June 30th, 1932 claimant forwarded to the Secretary of State its check for $50.00 in accordance with the aforementioned statement of May 7th, and asked if it was possible to get a refund of such item, for the reason that it had previously ceased doing business in this State. The Secretary of State made reply under date of July 8th, 1932 that the only way a foreign corporation could be absolved from payment of the tax was by filing a certificate of withdrawal, and further advising that if such certificate were filed in his office before July 31st, he would give the matter of making a refund of $50.00 further consideration.

Under date of July 11th, 1932 claimant returned to the Secretary of State the formal certificate of withdrawal, and asked for favorable consideration of its previous request for a refund. Having heard nothing from the Secretary of State regarding the matter, claimant again wrote him on September 8th regarding the refund, and on September 14th, 1932 the Secretary of State advised that inasmuch as more than thirty days had elapsed since the payment of the franchise tax, he was unable to make a refund, and that claimant's only recourse, if any, was to file a claim with this court.

The franchise tax in question was for the privilege of doing business in this State for the year commencing July 1st, 1932, and was due July 1st, 1932, but would not be delinquent until July 31st, 1932. Claimant had ceased doing business in the State prior to July 1st, 1932, but formal certificate of withdrawal was not filed until on or about July 12th, 1932. In his report on the matter the then Secretary of State stated:

"It has been the policy of this department to file certificates of dissolution of domestic corporations, and certificates of withdrawal of foreign corporations up to the time such corporations become delinquent without the payment of the franchise tax for the ensuing year, since such corporations are not deemed to be delinquent until after the last day of July.

"If the claimant in this case had not paid the franchise tax, the certificate of withdrawal would have been accepted by this department any time up to the last day of July of the year in which it was paid, at which time such corporation would have been deemed to be delinquent and no certificate of withdrawal would have been accepted until all the required fees were paid."

If, under the policy of the then Secretary of State, claimant was entitled to a refund, the same should have been made by such Secretary prior to July 31st, 1932.

However, we cannot be governed by the policy of the then Secretary of State. Our inquiry must be as to whether under the law claimant is entitled to a refund.

Section 90 of the General Corporation Act in force at the time in question, provided that "Any foreign corporation that has paid all fees due and has otherwise complied with the laws of Illinois, may withdraw from the State by surrendering its license and filing with the Secretary of State an affidavit of the President or Vice President and Secretary or an assistant Secretary of the corporation to the effect that no amount of the capital stock of the corporation is represented by property located and business transacted in this State," etc. etc. The right of the claimant to withdraw from the State is contingent upon the previous payment of "*all fees due.*" The franchise tax assessed against the claimant was *due* July 1st, and consequently under the statute it was necessary that such tax be paid before the claimant was entitled to withdraw. Claimant, having delayed the filing of its affidavit for withdrawal until after the tax was due, is not entitled to refund of the tax paid.

Furthermore, the franchise tax in question was paid by the claimant voluntarily, with a full knowledge of the facts, and it is the well settled law of this State that a tax voluntarily paid cannot be recovered back in the absence of a statute providing for such recovery.

Cooley in his work on Taxation (2d ed. p. 809), states the rule as follows:

"That a tax voluntarily paid cannot be recovered back, the authorities are generally agreed. And it is immaterial, in such a case, that the tax has been illegally laid, or even that the law under which it was laid was unconstitutional. The principle is an ancient one in the common law, and is of general application. Every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as the reason why the State should furnish him with legal remedies to recover it back."

In Dillon's Municipal Corporations, 3d edition, section 944, the rule is set forth as follows:

"Money voluntarily paid to a corporation under a claim of right, without fraud or imposition, for an illegal tax, license or fine, cannot,

there being no coercion, no ignorance or mistake of facts, but only ignorance or mistake of the law, be recovered back from the corporation, either at law or in equity, even though such tax, license, fee or fine could not have been legally demanded and enforced." Section 946 of the same work reads as follows: "Where there is no mistake or fraud, a voluntary payment cannot be recovered on the mere ground that the one party was under no legal obligation to pay and the other had no right to receive. Where the party would recover back taxes which he is under no legal obligation to pay, the payment must be compulsory."

The foregoing statements of the law have been approved by our Supreme Court in many cases. *Yates* vs. *Royal Insurance Co.*, 200 Ill. 202; *Board of Education* vs. *Toennigs,* 297 Ill. 469; *School of Domestic Arts* vs. *Harding,* 331 Ill. 330; *Richardson Lubricating Co.* vs. *Kinney,* 337 Ill. 122.

Under the well settled principles of law applicable to this case, we have no authority to allow a refund. Award is therefore denied and the case dismissed.