## Talbot, Auditor of Public Accounts, v. Charlton's Executor.

(Decided Jan. 27, 1933.)

BAILEY P. WOOTTON, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellant.

TRABUE, DOOLAN, HELM & HELM and GARNETT & VAN WINKLE, and MORRIS & JONES for appellee..

LESLIE W. MORRIS and MARION RIDER amicus curiæ, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Chapter 111, page 329, of the Session Acts of 1924, is a statute creating and providing for the collection of an inheritance or succession tax. It is now sections 4281a-1 to and including section 4281a-10 of the 1930 Edition of Carroll's Kentucky Statutes. Section 8 of

the act (now section 4281a-8 of the Kentucky Statutes) prescribes for a tax "of two percentum" of the actual value of "all shares of stock in corporations organized under the laws of this state," etc., when owned by nonresident decedents. Other sections and portions of the statute provide for a different rate of taxation to be demanded of and collected from estates of residents of the commonwealth owned at the time of their death on the same class of property. The questions of, whether or not the provision taken from section 8 of the act (section 4281a-8 of the Statutes) was unconstitutional and void because discriminatory against nonresident owners of such property was first before this court in the case of Zahn's Ex'r v. State Tax Commission, 243 Ky. 167, 47 S. W. (2d) 925, and again in the shortly following case of Havenmeyer v. Coleman, Auditor, 243 Ky. 194, 47 S. W. (2d) 1050, and in each of them, under a mandatory and compelling duty, we followed the opinion of the United States Supreme Court in the case of First Nat. Bank, Ex'r of Estate of Edward H. Haskell, v. State of Maine, 284 U. S. 312, 52 S. Ct. 174, 76 L. Ed. 313, in which it was held that such discriminatory provisions in state inheritance or succession tax statutes was in violation of article 4, sec. 2, of the Constitution of the United States, saying: "The citizens of each State shall be entitled to all privileges and immunities of citizens in the several States." We, therefore, held in the two cited domestic cases that the discriminatory section of our statute was invalid as applied to nonresidents and that the flat 2 per cent. rate therein upon the transmission by descent or devise of stock in domestic corporations, owned by nonresident decedents, could not be collected.

The question came before this court in the case of Zahn's Ex'r, supra, through an appeal by the taxpayer from the act of appraisement by the State Tax Commission of such taxable stock to the proper county court and from thence to the proper circuit court, and from thence to this court; while in the Havemeyer Case the tax was paid upon the assessment made by the State Tax Commission, but under vigorous written protests and with a like disputation of the taxability of the transfer of such property, because of such urged discrimination, and which was later sustained by the Supreme Court of the United States in the Haskell Case supra.

Earle P. Charlton, a citizen and resident of Fall River, Mass., died intestate on November 20, 1930, and the appellee and plaintiff below, the First National Bank of Boston, was appointed and qualified as executor of his estate. Among the assets thereof were 610 shares of the capital stock of the Southern Pacific Railway Company, a Kentucky corporation, and which had a value of $63,363.75. After the decedent's death plaintiff paid the 2 per cent. taxes demanded and obtained a permit for the transfer of the stock to it, and this action was later filed by it against the appellant and defendant below, J. Dan Talbot, auditor of public accounts for the commonwealth of Kentucky, to recover the amount of that payment, which was $1,203.92. Defendant demurred to the petition, which the court overruled, and, he declining to plead further, judgment was rendered in accordance with the prayer of the petition, and complaining of it he prosecutes this appeal.

In the Zahn Case no amount was paid. The proceeding was initiated by an appeal from the appraisement made by the tax commission by the taxpayer to the county court, and by successive appeals to this court. Therefore one very material question that is involved in this case was absent from that one. At this point reference might be made to the contention that there was no provided remedy of appeal as was prosecuted and employed by the taxpayer in that case. But we have reached a contrary conclusion. Section 4281a-3, and which is section 3 of the act under consideration, provides for the appraisement of the property liable to be taxed under the statute, and it expressly prescribes in its latter portion that: "The * * * party, if not satisfied with such appraisement may appeal within thirty days from the decision of the State Tax Commission to the county court of the county in which such estate is situated for the purpose of having said issue tried, and appeals may be taken by the personal representative of the estate or any interested party of the State Tax Commission from the judgment of the county court to the circuit court of the county, and from the judgment of the circuit court to the Court of Appeals in the time and manner as now provided by law in other civil actions."

But it is argued that the right of appeal therein provided for is only from the "appraisement" of the

property to be taxed by the proper state authorities, and that the word embraces and refers to only the "value" of the property upon which the amount of the tax should be estimated and collected, and that it does not embrace the *listing* for taxation of property which is not subject thereto, for whatever reason it may not be so. But we are not inclined to the belief that the Legislature employed the word "appraisement" in any such restricted sense. The section of the Statutes under consideration refers to and deals with the question of the *ascertainment* of the total amount of taxes that may be due from the person who should pay it, and which necessarily requires, not only the fixing of a valuation, but likewise the listing of articles of property subject to the tax. In other words, it is our conclusion that the word "appraisement," as used in the statute, embraces not only the valuation of the property, but also *its liability* to be taxed under the statute. The construction outlined was tacitly upheld in the Zahn opinion, although no express reference was made to the nonapplicability of the appeal therein prosecuted to the facts there presented, and which were the same as is presented in this case. That omission was, perhaps, due to the fact that respective counsel in that case did not mention or urge the point, but directed their arguments only to the validity of the statute, resulting in our failure to discuss the remedy employed by the taxpayer and in treating it as an available one, and which, we think, for reasons stated, is correct.

The question of "voluntary" or "involuntary" payment was not discussed in the Havemeyer Case, supra, nor was it argued or presented by counsel in their briefs filed in this court. It was assumed that the vigorous written protests made by the taxpayer therein before paying the taxes demanded of him were sufficient to render his payment involuntary, since it had been so held by this court (see Coleman, Auditor, v. Inland Gas Corporation, 231 Ky. 637, 21 S. W. (2d) 1030), up until a recent date when we held in the case of Coleman, Auditor, v. Consolidated Realty Company, 239 Ky. 788, 40 S. W. (2d) 387, 389, that: "If payment of an illegal tax is made under duress, it need not be paid under protest to entitle the payer to recover it back. On the other hand, *in the absence of a statutory provision,* a mere protest, of itself, does not render a payment of taxes involuntary." (Our italics.) Some

domestic cases are cited in support of that excerpt, but they involve the payment of municipal taxes and not state taxes, which latter are recoverable, if at all, under the provisions of section 162 of our Statutes.

In the cases concerning municipal taxes, cited in the Consolidated Realty Company Case, supra, in support of the proposition that a mere protest made at the time of payment did not convert a voluntary payment into an involuntary one, neither the section of the Statutes referred to, (162) nor any corresponding one applicable to municipal corporations, applied. However, we do not mean or intend from what we have said to modify or qualify the holding embodied in the excerpt from the Consolidated Realty Company Case, since it appears to be in accord with the holding of a majority of the courts in the absence of a contrary statutory provision. But, it will be perceived that in the excerpt supra this phrase was employed: ''In the absence of a statutory provision, a mere protest, of itself, does not render a payment of taxes involuntary.'' No express protest against the payment of taxes sought to be recovered in this case was made at the time of its payment by plaintiff. No such fact is pleaded in the petition. The only ground alleged, upon which it insists that the payment was compulsory, is that it needed the required permit for the transferring of the stock to it, so as to enable it to administer the estate, to settle it, to make proper distribution thereof, and to otherwise fulfill plaintiff's duties as personal representative. It is true that the petition alleged that it was a matter of urgent necessity that the stock be transferred to it, and for that reason it made payment. However, the entire language of the petition clearly imports that there was no protest of any sort in this case, and that the payment was made without objection, and which differentiates this case from the Havemeyer one supra, provided and if such distinction is a material one, and which will be later determined.

The general rule, if not the universal one, is that money paid under duress or coercion may be later recovered by the one who paid it, and which applies to the payment of taxes the same as to ordinary commercial transactions. Such duress and coercion exists when to refuse the payment demanded would be followed by irreparable consequences to the person or property of the

payer because of the inadequacy of prevailing remedies to rectify its wrongful collection. Such was the holding of this court in the Consolidated Realty Company Case, supra, and others cited therein. In the Inland Gas Corporation Case we held that if the payer of the tax there involved paid it without protest at the time, he could not thereafter successfully prosecute an action for its recovery. But that particular holding was overruled in the Consolidated Realty Company Case upon the ground that, unless the holder of the mortgage paid the recording tax demanded, he would be deprived of the benefit and protection of the constructive notice of his lien furnished by the recording of his mortgage, and the security of his lien would be constantly imperiled and liable to be destroyed at any time before his mortgage was recorded, by the mortgagor disposing of the property to an innocent purchaser, or incumbering it to an innocent party. It was, therefore, held that such a Damocles sword constantly threatening the destruction or impairment of his lien pending litigation constituted such a statutory coercion as rendered the payment of the taxes demanded of him an involuntary one, thereby entitling him to recover it from the auditor in a subsequent appropriate action.

That holding is in accord with practically all decisions, as well as all text-writers. But all of them deny such effect to the payment in all cases where the one making it has available to him an adequate means or remedy whereby his rights might be protected, and whereby the consequences following his refusal to pay would not necessarily or materially imperil either his personal or property rights. Such is the text in 48 C. J. pp. 742, 744, sec. 294, cited and relied on in amicus curiæ brief, and which is also true in the cases of Chapman & Dewey Land Company v. Board of Directors, 172 Ark. 414, 288 S. W. 910; and Garrison v. Tillinghast, 18 Cal. 404.

We have seen that the remedy under the provisions of section 4281a-3 of appeal from the assessment made by the State Tax Commission to the county court, and from thence to intervening courts up to this one, as was followed in the Zahn opinion, supra, was available to plaintiff. It is likewise conceded, and which is undoubtedly correct, that the issuance of the "permit" required by the inheritance tax statute could be com-

pelled by and through the various mandatory proceedings open to plaintiff. Either of which procedures and remedies could be heard and determined in a comparatively short time, during the pendency of which plaintiff would be deprived of nothing save and except possession of the evidence of title to the property upon which the tax was sought to be imposed. The title to it for the purposes of settlement and distribution vested in it upon its appointment and qualifications, and the beneficial title to it (subject to debts of the decedent and costs of administration) vested in the heirs or devisees upon the death of the testator or intestate decedent. Hence, no one was deprived of beneficial rights or interest in and to the property by any refusal to issue the permit, and the only risk incurred in delaying its issue until one or the other of the remedies terminated, would be the *possibility* of a decline in the value of the property so as to result in eventual loss to the estate. Ordinarily, however, that possible detriment is one existing only in conjecture, since under normal conditions it is as probable that the property will advance in price as that the price will decline. It is, therefore, doubtful if such a conjectural possibility would create such duress or coercion as to bring the case within the principle of law relied on and above referred to, but which coercive consequences were both present and potent in the mortgage tax statute. To our minds, therefore, the facts and circumstances of this case (and all of the authorities say that each must be governed by its own facts and circumstances) are entirely different from those dealt with in the Inland Gas Corporation, and Consolidated Realty Company Cases, supra. We have already adverted to the emergency facts involved in them rendering it absolutely necessary that the mortgages in those cases should be immediately recorded. The remote possibility of loss resulting in decline in market value, urged in this case, possesses no such emergency features.

But, apart from such conclusions, we have seen that the opinion in the Consolidated Realty Company Case, supra, expressly recognized the fact (by the emphasized language of the excerpt supra) that it would be competent for a statute to prescribe that an express protest should be made by the payer of the tax sought to be recovered in order to render his payment thereof involuntary and so as to entitle him to later proceed

for its recovery. The same recognition of the effect of such a statutory provision, if one is enacted by the Legislature, is made by other courts, and which is indeed not open to dispute, since the Legislature has the undoubted right to prescribe for such a protest as a condition precedent to the right to later recover the wrongfully paid tax when there is nothing in the Constitution inhibiting it. Such a provision transgresses none of the limitations of the authority of the Legislature found in our Constitution, or in the Constitution of the United States. Therefore, if our inheritance tax statute contains such a provision, then plaintiff should not prevail in this case, unless he complied with the statutory requirement and made the necessary protest at the time the tax sought to be recovered herein was paid, but which, as we have seen, is not disclosed by the petition. We, therefore, turn to the inheritance tax act in order to discover whether any such protest requirement is contained therein.

Subsection 4 of section 4281a-5, being a part of the inheritance tax statute, is in these words: "Any estate from which any such tax is or may be due the personal representative may make an estimate agreeable to the State Tax Commission and pay the same to the auditor of public accounts, who shall receipt therefor, at any time before the same is determined, and shall thereupon be entitled to any discount and be relieved of any interest and penalty and shall have permits issued for the transfer of securities or real estate upon the amount so paid in the same manner as if the tax were then determined. Any excess so paid shall be refunded to the person so paying or entitled thereto by such auditor out of any inheritance tax money in his possession, upon filing with such auditor a copy of the order fixing such tax, and attached thereto a certificate stating the amount of refund due."

It is at once apparent that its language prescribes an immediate remedy whereby the taxpayer may obtain, instantly, his permit entitling him to the immediate possession of the muniments of title to the property sought to be taxed, as well as the possession of the property itself, and which he may thereafter deal with and handle and dispose of in any manner he sees proper, as though the taxes demanded of him had been finally and completely settled; but with the reserve

right in him to later demand of the auditor of public accounts the taxes that he may have so wrongfully paid, if any. We can conceive of no other effect to be given to that subsection than a statutory requirement for an objection or protest to be entered and made at the time the taxes are paid, so that the collector thereof may become forewarned that an effort would be later made to recover the amount, either in whole or in part, and so that the distributors of such tax to the state agencies entitled to it might become advised that payments so made are not permanent but only tentative, subject to be reviewed by whatever proceeding the payer might thereafter take. That conclusion finds support in the reflection that the judgment sought in this case is to compel the auditor to issue his warrant upon the treasurer of the state to the plaintiff for the amount of the involved tax, and which would have to be paid out of the general fund; whereas, the subsection referred to requires such subsequent refund of the taxes paid thereunder, to be paid out of the inheritance tax fund.

But, we are again met with the insistence that the subsection deals with and relates to only the *amount* of the taxes demanded as based upon the valuation of the property, and not to the question whether or not the tax is demandable at all. That argument has heretofore been answered by us in discussing the section of the statute giving the right of appeal from the appraisement of the property by the State Tax Commission. The taxpayer may believe, or actually know, that the property upon which the tax is demanded is not liable for or subject to the tax, either because the statute imposing it is invalid, or because of some construction to be put upon it. Notwithstanding such belief or such knowledge, he is given by the subsection referred to, as we conclude, the privilege of obtaining his permit instanter by paying the tax demanded, accompanied by the necessary protest and objection, with the consequent right to later recover the whole or the excess amount on proper application. If the statute relates only to the *valuation* put upon the property and not to its liability for the tax at all, then the tax commission might never reduce it after payment, although the valuation so fixed was clearly excessive. In such case the payer of the tax would be compelled to resort to the proper legal procedure to obtain relief from the excess valuation, or appraisement, and we see no logical reason why

he might not obtain the same relief under the same proper procedure to recoup the whole of the tax demanded and paid by him if the property for any reason was entirely exempt from the liability, since his right to recover a portion of it if wrongfully paid can be no greater than his right to recover all of it if so paid. We do not think the subsection should receive the narrow interpretation that would confine its application to only partially wrongful payments and not to those entirely so.

On the contrary, **it is our** conclusion that it was intended by the Legislature to provide a means whereby the entire tax demanded, as well as any part of it, could be paid *under protest,* followed by the issuing of the proper permits and with the consequent right of the payer to have all disputes later adjusted in accordance with the law and the facts of the case by the employment of appropriate remedies therefor. Under that interpretation all coercive and duress features of the statute (even to the extreme limit contended for) could and would be avoided, and which differentiates this case from the mortgage tax and other cases wherein there was no such statutory provision; and which at the same time relieves the payer of the tax from the oppressive consequences of its nonpayment, even if it should amount to coercion and duress under the inheritance tax statute, but which feature we have hereinbefore discussed and disposed of. We, therefore, conclude that, since it is not made to appear in the petition that plaintiff entered the statutory protest and objection at the time the tax was paid in this case, the demurrer to it should have been sustained and that the court erred in overruling it.

What we have said concerning the interpretation of subsection 4 of section 4281a-5 is, of course, applicable only to inheritance or succession taxes, such as the statute provides for and deals with, and can have no application to other taxes levied and created by other statutes containing no such provisions.

Summarizing, our conclusions are: (1) That the administration of our inheritance tax statute produces no such duress or coercive features as to render the payment of the exacted tax, made without objection or protest, an *involuntary* one so as to entitle the payer to subsequently recover it under the provisions of section

162 of our Statutes, since the remedy by appeal therein provided, from the assessment of the tax by the State Tax Commission, as well as other remedies furnished by the law, are sufficiently adequate to protect the rights of the payer from probable danger in delay incident to the prosecution of such remedies; and (2) that even if it were otherwise, then subsection 4 of section 4281a-5 of our present Kentucky Statutes makes provision whereby the unwilling taxpayer may make immediate payment and obtain the necessary permits provided for by the statute, and later obtain any relief to which he may be entitled on account of a wrongful payment in whole or in part, provided he makes and gives to the collector of the tax, at the time he pays it, a warning protest that his payment is only tentative with the reserve right to subsequently collect it back by appropriate procedure. Such interpretations leave unimpaired the final conclusions reached by us in the Zahn and Havemeyer Cases, supra. In the one no payment of any sum had been made and no amount was sought to be recovered; while in the other, vigorous protest (as required by our interpretation) was made and which also embodied the grounds therefor.

For the reasons stated the judgment is reversed, with directions to set it aside, and to sustain the demurrer to the petition, and for other proceedings consistent with this opinion.

The whole court sitting.