THE STEWART DRY GOODS COMPANY, Plaintiff, v. John B. LEWIS et al., Defendants.

Fred LEVY et al., Plaintiffs, v. John B. LEWIS et al., Defendants.

J. C. PENNY COMPANY, Plaintiff, v. John B. LEWIS et al., Defendants.

The KROGER GROCERY & BAKING COMPANY, Plaintiff, v. John B. LEWIS et al., Defendants.

Nos. 609, 610, 611, 3908.

District Court, W. D. Kentucky.

District Court, E. D. Kentucky.
May 23, 1934.

Dissenting opinion.

For former opinion, see 7 F. Supp. 438.

Trabue, Doolan, Helm & Helm, of Louisville, Ky., and Nichols, Morrill, Wood, Marx & Ginter, of Cincinnati, Ohio, for plaintiffs.

Bailey P. Wootton, Atty. Gen., S. H. Brown, Asst. Atty. Gen., Batson, Cary & Welch, of Louisville, Ky., and Leslie W. Morris, of Frankfort, Ky., for defendants.

COCHRAN, District Judge.

I feel constrained to dissent from the majority opinion of the court.

Certainly the step-up in rate of tax as compared with that in volume of sales may be so great as to be arbitrary and unreasonable. It seems to me that such is the case here. The tax imposed for sales amounting to $400,000 is $200, and for those amounting to $1,000,000 plus is $10,000. The percentage of step-up in volume was 250—in tax imposed 5,000 per cent. or twenty times as much.

In the case of City of Newport v. Frankel, 192 Ky. 408, 233 S. W. 884, it was held that a city ordinance providing that a moving picture theater charging an admission fee of 15 cents should pay an annual tax of $450, and one charging 20 cents, $5,000 was arbitrary and unreasonable. The step-up in volume was 33⅓ per cent. and in tax 1,000 per cent. or thirty times as much. I am unable to make out that legislation providing a step-up in tax twenty times as much as the step-up in volume is so much less than that providing thirty times as to remove it from being arbitrary and unreasonable. Difference in business may make this decision inapt.

The classification which the act makes seems to me arbitrary and unreasonable on another ground. There are four distinct classes of retailers, singly operated units, department stores, chain stores, and mail order houses. Their points of difference are many. The chain store has many features and advantages which definitely distinguish it from the singly operated unit. The same is true as to a department store. That such is the case was recognized and held in State Board of Tax Com'rs v. Jackson, 283 U. S. 527, 51 S. Ct. 540, 75 L. Ed. 1248, 73 A. L. R. 1464. It was emphasized in Liggett Co. v. Lee, 288 U. S. 517, 53 S. Ct. 481, 77 L. Ed. 929, 85 A. L. R. 699.

It may be added that a department store has features and advantages definitely distinguishing it from the singly operated unit. The act ignores this natural and inevitable classification. It classes all retailers of whatever nature together and then reclassifies them according to their volume of sales. Each retailer has to pay the same tax as every other retailer having the same volume of sales. The singly operated unit has to pay the same rate of tax as the chain store or department store having the same volume of sales notwithstanding both have advantages, greater in case of the chain store, which makes for greater profits, over it. Likewise the department store has to pay the same rate as the chain store with the same volume of sales notwithstanding the chain store has advantages, which make for greater profits, over it.

In the Titusville Case retailers and wholesalers were treated by the municipality differently in the tax imposed per volume of sales. So here it seems to me that it was arbitrary and unreasonable not to treat singly operated units, department stores, and chain stores differently in the rate of tax imposed per volume. If the rate of tax was to be determined per volume, it should have been different as to each class of retailers.

The arbitrary and unreasonable character of the act seems to me to be demonstrated by the operation of the act. The returns for the year 1930, 1931, and 1932 are in the record. Mention will be made only of the returns for 1930, as they are the most complete. 24,163 retail merchants made returns for that year. Their gross sales amounted to $362,848,264 and the tax paid by them to $106,342.94. It is reasonable to assume that these returns cover all retail merchants in the state except plaintiffs and those not plaintiffs but protected by the temporary injunction,

25 in number. The gross sales of the plaintiff Stewart Dry Goods Company, a corporation operating a department store containing 77 departments in Louisville, amounted to $3,000,000, the tax upon which is a little over $23,000. Those of the plaintiffs Levy Bros., a partnership operating a department store in Louisville, amounted to $1,250,000, the tax upon which is almost $5,500. The gross sales of the plaintiff J. C. Penny Company, in this state, a corporation, a chain store operating department stores in and out of this state, 21 of which are located in this state, are not before me. The tax thereon seems to be about $10,000. And the gross sales in this state of the plaintiff Kroger Grocery & Baking Company, a corporation, a chain store operating retail groceries in and out of this state, 263 of which are located in this state, amounted to $14,500,000 in round numbers, the tax upon which is approximately $124,000. The tax of the Great Atlantic & Pacific Tea Company, 1 of the 25 protected by the injunction, is estimated at approximately $120,000 and the taxes of the other merchants so protected is placed at about $50,000. This makes the whole tax not over $450,000. Of this tax the Kroger Grocery & Baking Company and the Great Atlantic & Pacific Tea Company pay more than one-half though their aggregate gross sales are only 8 per cent. of the gross sales in the state. The tax of the Kroger Grocery & Baking Company on $14,-500,000 gross sales is more than $18,000 in excess of that paid by 24,163 merchants on $362,000,000 gross sales. The Stewart Dry Goods Company operating a single department store in Louisville pays $23,000 taxes on $3,000,000 of gross sales, nearly one-fourth as much as the 24,163 merchants making returns upon gross sales amounting to $362,000,000. Of those 24,163 merchants only 35 of them made gross sales in excess of $400,000. The sum yielded by the tax is a measly sum as compared with the needs of the state and 29 merchants out of over 24,000 pay three-fourths of this sum. In the case of the plaintiff Kroger Grocery & Baking Company, its profit in this state was in round numbers $172,000. Deducting from this the tax leaves $48,000 as net profit, or one-third of 1 per cent. of the gross sales. The net profit in 1931 would have been less than $40,000 and in 1932 there would have been a loss of $9,000. The same tax applied to its entire system would turn a profit of $1,400,000 into a loss of $700,000.

Apparently the sum yielded by the tax is contributed to generally by the retail merchants throughout the state. As a matter of fact, by reason of the credits against the tax, which the act authorizes, and which possibly of itself may render it unconstitutional, more than two-thirds of the retail merchants of the state make no contribution whatever to that sum. The statute is both vindictive and deceptive.

Another particular in which it seems to me that the act is unconstitutional is that it discriminates against garden and farm products raised in other states, in that it excepts from its provision retail merchants selling garden and farm products raised by them in this state. A retail merchant who sells such products raised elsewhere is subject to the tax. The plaintiff Kroger Grocery & Baking Company comes within that category. It operates a farm of 360 acres in Ohio named "Country Club Farm" after the "Country Club" brand, one of its best known brands. On that farm it produces cattle, sheep, hogs, poultry, milk, and garden and other farm products which are sold at retail in this state. The language of the exception is "those actually engaged in gardening or farming and selling garden or farm products raised by them in this state." The Court of Appeals of Kentucky in the case of Moore v. State Board, 239 Ky. 729, 40 S.W.(2d) 349, 354, construed this exception as follows:

"However, we are of the opinion that the phrase 'in this State' was meant to modify the word 'selling' and not the word 'raised.' The whole import of the act is the levy of a tax measured by sales made in this state. It is the sales which count, not the place where the goods sold are produced. It was plainly the purpose of the act to exempt from its operation those engaged in gardening and farming and selling their own products. Such sales the Legislature intended to be without the operation of the act, and it was of no moment to that body where the produce sold was raised."

The construction placed on the exception is as if it read "those actually engaged in gardening and farming and selling in this state garden or farm products raised by them." It seems to me that construing it to mean as if it so read is taking unauthorized liberty with the language of the act. There is one consideration, however, which makes it certain that the legislation had no such meaning. To so read the statute exempts the plaintiff Kroger Grocery & Baking Company from the act. The exemption is not of persons, but of retail merchants so engaged in selling and that plaintiff is such a mer-

chant. It is inconceivable that the Legislature intended to make such an exemption. Then, if it be taken that it did, this circumstance of itself would seem to affect the validity of the act. It will hardly do to hold that the plaintiff Kroger Grocery & Baking Company shall not pay the tax and the Great Atlantic & Pacific Tea Company shall. This is a case, as I see it, where this court is not bound to follow the state court in its construction of the act. It is governed by the statement on this subject in the case of Edward Hines Yellow Pine Trustees v. Martin, 268 U. S. 458, 463, 45 S. Ct. 543, 69 L. Ed. 1050.

On the other question involved, I think that the plaintiffs have a plain and adequate remedy at law in this court. Where this state levies a tax which the taxpayer claims is illegal and pays under protest, it is exacted from him by duress and the official into whose hands it comes and the state itself hold it in trust to repay to the taxpayer if it is held by the courts to have been illegal. It cannot and should not be used for the purpose for which it was levied and collected, at least, until the lapse of a reasonable time for the taxpayer to assert his right. Nothing else appearing, it is to be taken that this trust will be respected. In this state it has been the invariable practice to so treat taxes so paid and upon its being held that the tax is illegal to repay it at once. This is unaffected by the present wretched financial condition of the state. If the tax paid has not been kept intact so as to enable such repayment to be made, there is always enough cash in the general fund sufficient for that purpose. Sections 4688a-1, 4688a-2, and 4689, Kentucky Statutes, do not relate to warrants drawn by the auditor on the treasurer to repay illegal taxes which have been collected. They relate solely to warrants so drawn in favor of voluntary creditors of the state. Hence they have no bearing here. Section 162, Kentucky Statutes, relates to warrants drawn to pay such taxes. A decision of the Kentucky Court of Appeals is not needed to make good any of these propositions. Their correctness is apparent. A recognition of the invariable practice of the state officials to respect the trust imposed by payment under protest of taxes claimed to be illegal and an indication that the Appellate Court of the state will enforce such trust is to be found in the case of Talbot, Auditor, v. Charlton's Executor, 247 Ky. 568, 57 S.W.(2d) 519, 523. It involved the question as to whether a succession tax paid by an executor in order to procure the right to transfer corporate stock could be recovered when it had not been made under protest. The court in demonstrating the need for such a protest made at the time the tax was paid, said:

"So that the collector thereof may become forewarned that an effort would be later made to recover the amount, either in whole or in part, and so that the distributors of such tax to the state agencies entitled to it might become advised that payments so made are not permanent but only tentative, subject to be reviewed by whatever proceeding the payer might thereafter take." See, also, case of Talbott v. Urquhart's Ex'rs, 250 Ky. 143, 61 S.W.(2d) 1088.

Section 10 of the act here involved (Acts 1930, c. 149) expressly authorizes the taxpayer to bring an action to recover the tax which he has paid under protest. This authority is unlimited and amounts to a consent on the part of the state that it may be sued in this court. If judgment is rendered in its favor, this court has jurisdiction by mandamus to compel repayment of the tax. If limited to the general fund therefor, there is always sufficient in that fund out of which it can be paid. But it is not to be expected that it will be so limited. It should be taken that the tax paid, if paid under protest, will be kept intact so that it can be repaid upon such adjudication. There is nothing in the act against this.