(Nos. 19549, 19551.—

THE RICHARDSON LUBRICATING COMPANY, Appellee, *vs.* GARRETT DEF. KINNEY, State Treasurer, *et al.* Appellants.—THE INDIAN REFINING COMPANY, Appellee *vs.* ALBERT C. BOLLINGER, Director of Finance, Appellant.

*Opinion filed October 19, 1929—Rehearing denied Dec. 10, 1929.*

OSCAR E. CARLSTROM, Attorney General, MONTGOMERY
S. WINNING, and S. S. DUHAMEL, for appellants.

DOYLE, SAMPSON & GIFFIN, TERRY LINDNER, and A. F.
NEWKIRK, for appellee the Richardson Lubricating Com-
pany; OSCAR JOHN DORWIN, and BROWN, HAY & STEVENS,
for appellee the Indian Refining Company; (GEORGE T.
BARRETT & CHARLES V. BARRETT, CLIFFORD R. EDMISTER,
DENT, DOBYNS & FREEMAN, WILLIAM R. T. EWEN, A. M.
FITZGERALD, HARRY MOORE, GILLESPIE, BURKE & GILLES-
PIE, GOOD, CHILDS, BOBB & WESCOTT, HICKS & FOLONIE,
ROY GEIBE HILL, HUFF & COOK, NEWBY & MURPHY,
OWEN & CAMPBELL, WARREN PEASE, S. D. SCHOLES, L. E.
STONE, T. J. SULLIVAN, FRANK L. TRUTTER, WINSTON,
STRAWN & SHAW, WALTER A. WADE, ROBERT R. HUM-
PHREY, COBBS, LOGAN & ALEXANDER, JAMES T. MONTGOM-
ERY, P. C. OTWELL, VANSANT & BESSE, MIGHELL, GUNSUL
& ALLEN, and WILLIAM R. FRIEDRICH, of counsel.)

Mr. JUSTICE DIETZ delivered the opinion of the court:
This is an appeal by the Director of Finance and the
State Treasurer from a decree of the circuit court of
Sangamon county enjoining the director from paying to
the Treasurer and the Treasurer from receiving, and re-
quiring the director to refund to the Richardson Lubricat-
ing Company certain moneys paid by it to the Department
of Finance as taxes on the sale and distribution of motor
fuel under the Motor Fuel Tax act of 1927, which was held
unconstitutional in *Chicago Motor Club* v. *Kinney,* 329 Ill.
120, on February 24, 1928. The Director of Finance has
also appealed from a similar decree entered in the same
court against him and in favor of the Indian Refining
Company. The two appeals have been consolidated in this
court for hearing and decision. The pleadings and facts
in both cases are substantially identical.

The bill of complaint of the Richardson Lubricating Company avers that the complainant has been a distributor of motor fuel in the State of Illinois licensed under the act since July 31, 1927; that it has invested and employs in its business large sums of money and a great amount of valuable property and equipment; that since so licensed the complainant has made the returns and payments to the Department of Finance provided for in the act; that on February 20, 1928, the complainant filed its return and paid to said department $3674 as taxes on motor fuel sold and distributed by it during the month of January, 1928, and that such return was made on a form furnished to the complainant by said department which contained a printed synopsis of certain provisions of the act, including the following: "Secs. 12 and 13.—Criminal penalties, revocation of the distributor's license and injunction proceedings are provided for violation of the provisions of the act." It further charges that said payment was made because of the fear and belief of the complainant that unless the tax was paid it would be subjected to the penalties provided in the act, and therefore such payment was made under duress. The charges of duress are: "That at the time of making said return and payment to said Department of Finance as above set forth, the complainant, having knowledge of the penalties provided for in said purported act, feared and believed that unless such returns were made and such tax was paid the license of the complainant to act as a distributor of motor fuel within this State would be forthwith revoked by said Department of Finance through such of the defendants as are officers therein, as aforesaid; that the complainant would be subjected to suits to recover said tax imposed by said purported act; that the complainant and its officers, agents and employees would be subjected to criminal prosecution and fine; that they, and each of them, would, in fact, be so prosecuted and fined, and that its said officers, agents and employees would further be sub-

jected to imprisonment and would be imprisoned, all as provided in said purported act; and further, at the time of making such return and payment as aforesaid the complainant also feared and believed that the revocation of its said license and the institution and prosecution of said suits and criminal prosecutions, and the imposition and infliction of said fines, penalties and forfeitures as aforesaid, would greatly hinder and perhaps wholly ruin the complainant's said business, and that thereby the complainant would suffer great financial loss and would be greatly, permanently and irreparably damaged and injured thereby; and the complainant says that it was caused to and did make the return and payment aforesaid wholly by reason and on account of the said belief and fear so entertained by it as above set forth." The bill also alleges that on March 19, 1928, the complainant filed with the Department of Finance a written protest, declaring that the sum so paid by the complainant was illegally exacted of it on the ground that said act had been declared unconstitutional, and demanding that said sum be returned.

The appellants, who were made defendants to the bill, filed an answer thereto, admitting all of the foregoing allegations thereof but denying that such payment was made involuntarily, and averring that the defendants at all times regarded the act as valid; that such payment was made by the complainant willingly, freely and without complaint or protest, knowing and believing that the burden of the tax did not fall upon the complainant but upon the consumers of motor fuel, and that such tax would be used in the construction of additional hard roads, which would result in an increased use of motor fuel, to the benefit of the complainant in the prosecution and successful operation of its business; that no threat to enforce the penalties prescribed by the act had been made against the complainant, its business, agents or employees; that the complainant sold the motor fuel upon which the tax was paid and at the time

of such sale collected from the purchasers thereof the sum of two cents for each gallon sold as such tax thereon and not as a part of the purchase price, and then and there represented and advertised to the public and to its customers purchasing and about to purchase motor fuel, that said act was in force and effect and that it was charging and collecting from those who purchased motor fuel from it the sum of two cents per gallon as and for the purpose of paying such tax; that the complainant has not returned or offered to return to such purchasers any portion of such tax so paid by them but has kept and intends to keep the same, and that the complainant has not suffered and will not suffer any injury or loss because of such payment, in consequence whereof the complainant does not come into court with clean hands and is estopped from asserting the claims set forth in its bill. Exceptions of the complainant to the foregoing averments of the answer were sustained. To support certain of these averments the defendants filed a cross-bill for discovery, to which a demurrer of the cross-defendants was also sustained. The defendants elected to stand by their answer and cross-bill, and a hearing was had on the bill and answer, which resulted in the decree appealed from.

The first question to be determined is whether the payment was made voluntarily or under duress. This is a question of law, to be determined from the allegations of fact contained in the bill and answer, assuming all of them to be true. The only charge of duress alleged in the bill is that the payment was made because of the fear and belief of the complainant that unless the tax was paid, the complainant, its officers and agents would be subjected to the penalties provided in the act. The answer avers that the payment was made by the complainant willingly, freely and without complaint or protest. These allegations of the bill and answer are not inconsistent. One who makes payment of a legal demand cannot be said to have made such

payment involuntarily merely because he does so in the fear and belief that unless such payment is made he will be subjected to the penalties of a valid act, otherwise all taxes could be said to be paid involuntarily. Likewise, one is not under duress who pays a demand he believes to be just or the legality of which he does not question, for the law will presume "that every citizen freely and voluntarily discharges every duty which he believes it imposes upon him," and no person will "be heard to say that he was coerced to do that which he believed the law required of him." (*Town of Ligonier* v. *Ackerman,* 46 Ind. 552; *Yates* v. *Royal Ins. Co.* 200 Ill. 202.) In the *Ackerman case, supra,* suit was brought to recover license fees paid under an invalid ordinance. The complaint alleged that such fees were paid by the plaintiff "for the purpose of avoiding the penalties and forfeitures provided in said ordinance," and the answer averred that such fees were paid by the plaintiff without objection and under the belief that the ordinance was valid. The court held that from the allegations of the complaint and the averments of the answer, taken together, it followed "as a conclusion of law that the payment was voluntary." In two later cases it was held that allegations identical with those contained in the foregoing complaint were not sufficient on demurrer to show an involuntary payment. *Town of Sullivan* v. *McCammon,* 51 Ind. 264; *Town of Brazil* v. *Kress,* 55 id. 14.

It does not appear that the complainant here regarded the tax to be illegal or that it questioned the validity of the act. Neither is it shown that the complainant objected to the operation of the act or to the payment of the tax thereby imposed. On the contrary, the bill avers that as soon as the act became effective the complainant applied for and took out a license thereunder, made all of the reports and payments thereby required, and was operating under such license at the time the payment in question was made. The answer also alleges that the complainant knew and believed

that it would benefit from the payment of the tax and that the burden thereof would not fall upon the complainant. It further avers that the complainant collected from its customers the tax which it seeks to recover and represented to them and the public that the act was in force and effect. The allegations of the bill and answer, considered together, show that the complainant elected to operate under the act believing it to be valid, and, having relieved itself of the burden of the tax, willingly made the payment, regarding the operation of the act under those circumstances to be beneficial. From these allegations it appears that the complainant preferred to operate under the act and did not desire to question its validity. It must be presumed that the complainant did not intend to defraud its customers and that it was not unwilling to pay the tax it collected from them for that purpose. Especially is this true in the absence of any reason or motive for its refusal to do so. That the complainant made the payment without reservation or intention to seek a return of the tax is further indicated by the fact that at the time of payment no protest was made. Such a protest was necessary to prevent the proceeds of such payment from being paid to the State Treasurer, which might have been done immediately. (Smith's Stat. 1927, chap. 127, pars. 171, 172.) If the payment had been made by the complainant involuntarily and with the intention of seeking a refund, it must be presumed that the complainant would have followed the only available method of preventing such proceeds from being paid to the State Treasurer, from whom it is alleged in the bill a recovery would be exceedingly difficult, if not impossible. The later protest of the complainant made on March 19, 1928, after the act had been declared unconstitutional, cannot be considered as throwing any light on the attitude of the complainant at the time the payment was made. The synopsis of the act printed on the form of the return, indicating that its provisions would be enforced, could have had no greater

influence on the mind of the complainant than the mere existence of the law. (*Yates* v. *Royal Ins. Co. supra.*) The only fair conclusion that can be reached from the allegations of the bill and answer and the legitimate inferences to be drawn therefrom is that the payment was made voluntarily and not under duress. It is well settled that in the absence of fraud taxes so paid cannot be recovered, even though they are illegal because laid under an unconstitutional law, where there is no statute authorizing such recovery. (*Elston* v. *City of Chicago,* 40 Ill. 514; *Yates* v. *Royal Ins. Co. supra; Board of Education* v. *Toennigs,* 297 Ill. 469.) No fraud is charged in the bill, and the answer avers that the defendants were advised and believed that the act was valid. It is not claimed that a recovery is authorized by statute.

The appellants also contend that because of the conduct of the complainant as shown by the answer the complainant does not come into court with clean hands and is estopped from asserting the claim set forth in its bill. According to the answer the complainant elected to operate under the act and held out to its customers and the public that the act was valid. It collected as a tax from its customers the amount which it seeks to recover, for the purpose of paying the tax imposed upon it by the act. This it was neither required nor authorized to do. (*Chicago Motor Club* v. *Kinney, supra.*) It has not returned or offered to return but intends to keep what it has so collected. It participated equally with the defendants in the collection of the illegal tax, and the parties are *in pari delicto.* One who seeks equity must do equity, and one who refuses to do equity does not come into court with clean hands. (*Winslow* v. *Noble,* 101 Ill. 194; *Thorp* v. *McCullum,* 1 Gilm. 614; *Thompson* v. *Davis,* 297 Ill. 11; *Hooper* v. *Bank of Two Rivers,* 263 id. 400; *Bennitt* v. *Wilmington Star Mining Co.* 119 id. 9; *Byars* v. *Spencer,* 101 id. 429; *Reynolds* v. *McCurry,* 100 id. 356; *Carver* v. *Lasater,*

36 id. 182; *Ilo Oil Co.* v. *Indiana Natural Gas and Oil Co.* 174 Ind. 635.) The complainant has not done equity by returning the money which it collected nor has it offered to do so. On the contrary, it intends to keep what it illegally collected and will suffer no loss as the result of the payment sought to be recovered. The funds illegally collected do not belong to the complainant, neither do they belong to its customers who paid the tax without reservation or protest. (*City of Chicago* v. *Burke,* 226 Ill. 191; *Yates* v. *Royal Ins. Co. supra.*) Unless even-handed justice and good conscience demand that the relief asked be granted, equity will not lend its aid to grant such relief. (*Williams* v. *Dutton,* 184 Ill. 608; *Glos* v. *Stuckart,* 277 id. 346.) A volunteer collector of illegal taxes voluntarily paid to him is estopped by his inconsistent conduct from asserting a claim to recover them from one for whose benefit they were collected. (*City of Chicago* v. *Burke, supra; Cummings* v. *City of Chicago,* 248 Ill. 392.) This is also true of a *de jure* collector. (*Board of Education* v. *Toennigs, supra.*) "A fraudulent intention is not essential to the doctrine of estoppel. It is enough if a fraudulent effect would follow allowing a party to set up a claim inconsistent with his former declarations or conduct." (*Milligan* v. *Miller,* 253 Ill. 511.) If the answer is true, the complainant does not come into court with clean hands and is estopped from asserting the claim set up in its bill. *Southern Pacific Co.* v. *Darnell-Taenzer Lumber Co.* 245 U. S. 531, and *Louisville and Nashville Railroad Co.* v. *Sloss-Sheffield Steel and Iron Co.* 269 id. 217, relied on by the complainant, have no application. In those cases the excessive freight charges sought to be recovered were not collected separately as transportation costs but were included in the price of the goods sold, and the proceedings were not in equity but at law, where the equitable defenses interposed in this case are not available.

The decrees of the circuit court of Sangamon county are reversed and the causes are remanded, with directions to overrule the exceptions to the answers and the demurrers to the cross-bills.

*Reversed and remanded, with directions.*