## Shannon, Auditor of Public Accounts, v. Hughes & Co.

(Decided June 25, 1937.)

B. M. VINCENT, Attorney General, and J. W. JONES, Assistant Attorney General, for appellant.

STOLL, MUIR, TOWNSEND & PARK and WILSON & HARBISON for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming in part and reversing in part.

This is a companion case to James W. Martin, Commissioner of Revenue, et al. v. Aniello Nocero, doing business as the Nocero Ice Cream Company, 269 Ky. 151, 106 S. W. (2d) 64, decided March 23, 1937.

Hughes & Co., a corporation engaged in the business of manufacturing and selling ice cream and allied products, brought an action in the Franklin circuit court against the auditor of public accounts to recover the sum of $4,126.39, the amount of taxes alleged to have been paid by it, under protest, to the Commonwealth of Kentucky during the months of July and August, 1936, under and pursuant to the provisions of chapter 3 of the Acts of the General Assembly of Kentucky passed at its Third Extraordinary Session begun March 30, 1936 (Ky. Stats., sec. 4281d-1 et seq.). The plaintiff sought to recover the taxes paid on ice cream manufactured and sold by it on the ground that so much of the act as imposed a tax of 7 cents a quart on all ice cream sold in Kentucky was unconstitutional and void as being discriminatory and confiscatory. The circuit court adjudged that the challenged tax was invalid, and granted to the plaintiff the relief it sought. The defendant has appealed.

The evidence is even more voluminous than the evidence in the case of Martin v. Nocero Ice Cream Company, and equally convincing that the tax has had a ruinous effect on the ice cream business and has resulted either in wiping out the profits of the business entirely, even though conducted with ordinary efficiency, or reducing the profits to a level unreasonably low. Hughes & Co. manufactures ice cream at Lexington, Ky., and sells it throughout central Kentucky. During several months preceding the effective date of the act, its volume of sales showed a large increase over the sales made during the same period in the preceding year, but beginning on the effective date of the

act, its sales declined to such an extent that the business, instead of producing a probable profit, will suffer a substantial loss during the year beginning July 1, 1936. A number of manufacturers of and dealers in ice cream from other sections of the state testified that the tax had reduced the volume of sales to such an extent that a profit could not be made. It was further shown that the decline was not temporary. Many witnesses testified that their sales declined proportionately more during October, 1936, than during the three preceding months. It is unnecessary to detail the evidence which is all to the same effect, and stands uncontradicted.

It is suggested that the evidence may not correctly reflect conditions in the ice cream business and the influence of the challenged tax thereon, but the record contains nothing which warrants a deduction that a true picture of the effects of the tax has not been presented. The defendant was represented by able attorneys who cross-examined all of the witnesses at great length, and the facts were fully developed. The record has been made, and we must accept it as it is.

The case, in so far as it involves the validity of the act in question, is controlled by Martin v. Nocero Ice Cream Company, supra, and that part of the judgment adjudging the act to be invalid is affirmed.

In the Nocero Ice Cream Company Case a recovery of the taxes that had been paid into the state treasury by the plaintiff in that action was not sought, but in the present case the appellee recovered the sum of $4,136.39, the amount of taxes it alleged it had paid under protest to the Commonwealth of Kentucky during the months of July and August, 1936. Appellant insists that even if the tax is unconstitutional and void, the appellee, having collected the tax from its vendees, is not entitled to recover it from the commonwealth. The proof shows that appellee added the tax to the price charged for its products, and thus collected the tax from its vendees and shifted to them the economic burden of its imposition. Ordinarily, one who involuntarily pays a tax imposed by an unconstitutional statute is entitled to a full refund upon mere proof of payment. Talbot v. Charlton's Ex'r, 247 Ky. 568, 57 S. W. (2d) 519; Coleman v. Consolidated Realty Company, 239 Ky. 788, 40 S. W. (2d) 387. However, the Legisla-

ture may, in the taxing act itself, restrict in certain respects the right of the taxpayer to recover. It may require him to pay the tax under protest, Talbott v. United Supply Company, 263 Ky. 95, 91 S. W. (2d) 1002; Talbot v. Charlton's Ex'r, supra; or it may require a showing that the applicant for the refund is the real taxpayer and has not shifted the tax to another. U. S. v. Jefferson, Electric Manufacturing Company, 291 U. S. 386, 54 S. Ct. 443, 78 L. Ed. 859. In the Jefferson Electric Manufacturing Company Case the Supreme Court sanctioned the refusal to refund illegal taxes to one who, although he paid them, did not bear their burden. It is true that the court had under consideration in that case an act of Congress which required the claimant to prove that he had not shifted the burden of the tax as a condition precedent to his recovery. This was a legislative recognition of the principle that a taxpayer who is allowed the refund of a tax, the economic burden of which has been borne by another, has been unjustly enriched. The doctrine of unjust enrichment has received a wide application in tax cases even without the aid of a statute. The Supreme Court of Illinois in a number of decisions denied recovery of taxes paid under an unconstitutional statute levying a tax of two cents a gallon on gasoline, where it appeared that the claimant had collected the tax from his vendees, on the ground that recovery by the claimant would not inure to the benefit of the vendees. Richardson Lubricating Company v. Kinney, 337 Ill. 122, 168 N. E. 886; Standard Oil Company v. Bollinger, 337 Ill. 353, 169 N. E. 236; Standard Oil Company v. Bollinger, 348 Ill. 82, 180 N. E. 396. In Benzoline Motor Fuel Company v. Bollinger, 353 Ill. 600, 187 N. E. 657, refunds were permitted to a claimant who had kept accurate records of each customers' tax contributions, and had agreed with its customers to make proper refunds. Other cases in which refunds of taxes have been denied on equitable grounds, though the action was at common law, are: U. S. Paper Exports Association v. Bowers (C. C. A.) 80 F. (2d) 82, 84; Ralston Purina Company v. U. S. (Ct. Cl.) 58 F. (2d) 1065; First National Bank of Birmingham v. U. S. (D. C.) 12 F. Supp. 301; New York Life Insurance Company v. Anderson (C. C. A.) 263 F. 527; People v. Ventura Refining Company, 204 Cal. 286, 268 P. 347, 283 P. 60; Cf. Bull v. U. S., 295 U. S. 247, 55 S. Ct. 695, 79 L. Ed. 1421; Lewis

v. Reynolds, 284 U. S. 281, 52 S. Ct. 145, 76 L. Ed. 293; Myers v. Hurley Motor Company, 273 U. S. 18, 47 S. Ct. 277, 71 L. Ed. 515, 50 A. L. R. 1181; Ver Straten v. Goshen County, 35 Wyo. 67, 246 P. 916. In the Bowers Case the court said:

"Although the action is at law against the collector, it is governed by equitable principles and is essentially an action for money had and received against the United States, out of whose treasury recovery will come in the end. Lewis v. Reynolds, 284 U. S. 281, 283, 52 S. Ct. 145, 76 L. Ed. 293; New York Life Insurance Company v. Anderson, 257 F. 576, 577 (D. C. S. D. N. Y.). Speaking of an action for money had and received, Lord Mansfield said, in Moses v. Macferlan, 2 Burr. 1005, at page 1010: 'It is the most favorable way in which he (the defendant) can be sued. He can be liable no further than the money he has received; and against that, may go into every equitable defence upon the general issue; he may claim every equitable allowance. * * * in short, he may defend himself by everything which shows that the plaintiff, ex æquo et bono, is not entitled to the whole of his demand, or to any part of it.' To the same effect is the language of Mr. Justice Sutherland in. Myers v. Hurley Motor Company, 273 U. S. 18, 24, 47 S. Ct. 277, 71 L. Ed. 515, 50 A. L. R. 1181. These principles have been strikingly illustrated by actions brought for the recovery of illegally collected taxes."

Here the appellee's vendees who actually paid the tax are without recourse, both against the commonwealth and their vendor. Lash's Products Co. v. U. S., 278 U. S. 175, 49 S. Ct. 100, 73 L. Ed. 251; Acme-Evans Company v. Smith (D. C.) 13 F. Supp. 356; Heckman & Co. v. Dawes & Son Company, 56 App. D. C. 213, 12 F. (2d) 154; Christopher v. Hoger & Co., 160 Misc. 21, 289 N. Y. S. 105; Texas Company v. Harold, 228 Ala. 350, 153 So. 442, 92 A. L. R. 523.

Section 4281d-2 of the Kentucky Statutes reads in part:

"The tax imposed upon the sale of ice cream shall be collected by the person making the first sale of ice cream in the Commonwealth of Kentucky and such person shall account for same to the Depart-

ment of Revenue and he shall make a monthly report covering such sales on or before the 10th of each month following the month during which this Act becomes effective and shall accompany said report with a certified or cashier's check for the amount of the tax.''

Reading the act as a whole, it requires the first seller of ice cream to pay to the commonwealth the levied tax thereon, but the quoted provision goes farther than merely to permit him to collect the tax from his customers, for its requirements clearly indicate that it was his duty, as the one to whom the commonwealth looks for the payment of the taxes, to collect the amount thereof from his customers when he makes a sale of ice cream unless he absorbs the tax himself, and recovery of the tax may in no event be had by any one unless he was the payer of the tax and bore the burden thereof and unless he paid the tax under protest. Section 4281b-21 expressly provides that ''the aggrieved taxpayer shall pay under protest the tax as and when required and may at any time within two years from the date of such payment sue the Commonwealth,'' etc. The Legislature meant by the term ''aggrieved taxpayer'' the person who discharged the tax obligations with his own funds. It does not refer to any one who may collect the tax and afterwards account for it to the proper authorities, but who does not part with any of his own funds in doing so. The appellee never became the real taxpayer within the meaning of the provision of the statute permitting recovery by collecting the levied tax from its customers when it made the sale of them. A proper interpretation of the statute as a whole would seem to be that the manufacturer of the ice cream or the one who makes the first sale of it in this commonwealth is the one to whom the commonwealth looks and will hold accountable for the tax, but, under section 2 of the act, such person may collect the tax from his customers at the time he makes the sale and delivers the taxed commodity pursuant thereto. In that event it is clear that the amount so collected and later accounted for to the commonwealth will never be absorbed in any manner by the statutory payer of the tax. He has never been out any amount, but only became the collector of the tax for the commonwealth and the custodian of the amount of it until the date when he accounted to the

commonwealth therefor. We have seen that under the terms of the Statutes the right to sue for and collect the tax, if wrongfully or illegally exacted and paid, is given only to the "aggrieved taxpayer," and then only when he makes payment thereof "under protest." When the payment of the tax was made by the first purchaser to the first seller, it was not only made by a person other than the seller, but there was never an occasion for the seller in such transaction to protest the collection of the tax, since he would be the collector in the character of transaction referred to and it is hardly probable that the Legislature contemplated that he, as such collector, would protest to himself against the payment of the tax by his purchaser.

We are of the opinion that, under the circumstances herein outlined, the sellers of ice cream who paid the tax into the state treasury should show that the amounts they seek to recover do not include collections made by them from their customers pursuant to the provisions of section 2 of the act. To hold otherwise would be manifestly unjust and would result in the unjust enrichment of the one seeking to recover the tax from the commonwealth and supported by no outlay on his part. Indirectly it would allow him to take money wrongfully paid into the treasury of the commonwealth by another through himself acting as collector, and leave the actual payer of the tax with a bare cupboard. The act does not countenance such a manifest injustice. The appellee should be confined in the amount of its recovery to taxes paid out of its own funds and which it did not collect from any other source. It will be an easy matter to ascertain the facts as to how the collection of the tax was made, since, under section 4281d-20 of the Statutes, the distributor of ice cream is required to make and preserve written records of all sales and collections made by him, and it must be presumed that these requirements were followed.

Upon a motion for an injunction before a judge of this court, made pursuant to the provisions of section 297 of the Civil Code of Practice, an opinion was rendered denying the injunction and stating that the plaintiff's remedy was under section 14 of the act, which permitted the aggrieved taxpayer to sue the commonwealth for the recovery of the tax if it had been paid under protest. This statement was based upon the

facts stated in the plaintiff's petition which were to the effect that plaintiff itself had paid the taxes sought to be recovered.

It is suggested that appellee's business was injured by reason of the imposition of the tax in question, which reduced its volume of sales, and that therefore it should be permitted to recover the money paid by it to the commonwealth to recoup, in part, its losses, but this would result, in effect, in permitting a recovery of damages against the commonwealth for injuries sustained by the plaintiff through the operation of the taxing act. Furthermore, appellee could have obviated all loss by paying the tax itself and suing to recover it as authorized by the act.

The judgment in so far as it permitted appellee to recover taxes which it had collected from its vendees is reversed.

Whole court sitting.

Stites and Clay, JJ., dissenting on the ground that appellee was entitled either to an injunction or to a recovery of the taxes, and has been denied both.