INDEPENDENT LINEN SERVICE Co. *v.* STONE.

(In Banc. Feb. 9, 1942. Suggestion of Error Overruled March 23, 1942.)

[6 So. (2d) 110. No. 34794.]

Lyell & Lyell, of Jackson, for appellant.

834

Greek L. Rice, Attorney General, by W. D. Conn, Jr., Assistant Attorney General, for appellee.

Argued orally by **G. G. Lyell, Sr.**, for appellant, and by **W. D. Conn, Jr.**, for appellee.

**Roberds, J.**, delivered the opinion of the court.

This appeal is from a judgment of the circuit court, denying the right of appellant to recover money it paid under the so-called Sales Tax Law of Mississippi, as the operator of a laundry from March, 1937, to April, 1940.

Prior to and during said period appellant was engaged in the business of renting and leasing towels, linens, pillow cases, sheets and similar articles. It owned the

rented articles, delivered and called for, and washed and ironed them, having suitable equipment and machinery for such laundry purposes located at Jackson and Meridian in this state. It has never laundered for any other person, and has never sold any tangible property.

It has paid all privilege taxes as a linen service company, as required by Section 126, Chapter 20, Laws of 1935, Extraordinary Session, and Section 124, Chapter 120, Laws of 1940; and during said time has made reports to appellee as a linen service business. It collected from its customers during said period as additional items to the service charges, 2 percent as sales tax. It did not pay to the state these collections, as collected. It did so only after demand by appellee under the provisions of the sales tax act.

This appeal presents for decision two questions: First, whether appellant is liable, under the Mississippi Sales Tax Law, for 2 percent of its gross income for engaging in the business of operating a laundry; and, second, if not, whether it is precluded, under the "unjust enrichment" doctrine, from recovering the money it paid as a sales tax on the demand of appellee.

Considering now the first question, Sec. 6(1), Ch. 158, Laws of 1936, amended by Sec. 2-f(1), Ch. 113, Laws of 1938, imposes "upon every person engaging or continuing within this state in any of the following businesses . . . laundries . . . there is likewise hereby levied and shall be collected a tax, on account of the business engaged in, equal to two per cent of the gross income of the business." Appellee says that these sections impose the sales tax upon appellant. It is not contended that there is any other statute which places upon appellant the burden of the sales tax.

The privilege tax laws of the state place the operation of laundries and linen service business in different classifications. Sec. 122, Ch. 120, Laws of 1940, headed "Laundries, hand," imposes a named tax on persons operating a "hand laundry;" Sec. 123 of that act, under

the heading "Laundries," imposes a tax "Upon each person operating a laundry other than a hand laundry;" Section 124 of that act, under the heading "Linens, towels, etc., leasing or renting of," imposes a tax "upon each person engaging in the business of renting or leasing towels, linens, pillow cases, sheets, bed spreads, or other similar articles . . ," a state-wide tax of $200, and a regulated scale of taxes for each municipality in which business is done.

And this proviso is added to that section: "Provided, further, that the payment of the said tax of $200.00 shall only authorize the handling of the property of such licensee, and does not authorize the laundering of linens other than property of the licensee. This is express authority to such licensee to launder its own linens. Appellant did no laundering for other persons.

In Commonwealth of Kentucky v. Pearl Laundry Co., 105 Ky. 259, 49 S. W. 26, 27, certain defendants were ". . . engaged in the towel-supply business, for which they pay a license, and which consists in laundering and furnishing towels, and in laundering sheets and pillowcases . . . operate only what is known as a 'towel-supply business,' which is expressly covered by that name in a separate ordinance, and for which they pay the annual license fee of $50 prescribed therein." An ordinance of the City of Louisville imposed a tax on "Every person, firm or corporation conducting or operating a laundry or engaged in the laundry business . . ." The court held that these defendants were not operating a laundry and were not within this ordinance.

There are many professions, callings and businesses that are not covered by the Mississippi Sales Tax Law. It is a familiar rule that tax statutes are construed favorably to the taxpayer. Appellant was not liable for the sales tax in this case.

On the second question, appellees contend that, even though appellant is not liable for the tax, yet having collected it from its customers and having paid it to ap-

pellee, appellant is not entitled to a refund thereof; that it has no interest therein entitling it to a recovery; that to so permit would unjustly enrich appellant. The contention has support in reason and authority, but we do not think it should apply under the conditions here.

Appellee relies mainly on Shannon v. Hughes & Co., 270 Ky. 530, 109 S. W. (2d) 1174. This case is authority for appellee's contention, but it, and most of the cases cited therein, may be distinguished from the case at bar. That case was an action to recover from the state auditor money paid him by the plaintiff under protest as a tax upon ice cream sold by plaintiff, who claimed that the law was unconstitutional. The court held the law unconstitutional, but denied recovery to plaintiff. In a prior companion case, where the fund had not been paid to the auditor, the same court held that the taxpayer was not liable. Martin, Commissioner of Revenue, v. Nocero Ice Cream Co., 269 Ky. 151, 106 S. W. (2d) 64. The first distinction between the Shannon case and the case at bar is that under the Kentucky statute, ". . . it was his [taxpayer's] duty . . . to collect the amount thereof . . . unless he absorbs the tax himself . . . ." [270 Ky. 530, 109 S. W. (2d) 1176.] In the case at bar the taxpayer owed no duty to the state to collect the tax from the customers. That duty exists only where one is engaged in selling tangible property. Ch. 155, Laws 1936, page 149. Not being liable itself for the taxes in the case at bar, and having no duty to the state to collect them from the customers, no color of office or trust for the state attached to such collections.

In the next place, while it appears from the record in the Shannon case that the tax was added to the price of the products, it is not shown that the tax was a separate and distinct charge as such. In the instant case there was such separate designated charge. The tax was separated from the price charged for the linen service. The taxpayer knew he was paying a tax as such. In Benzoline Motor Fuel Co. v. Bollinger, 353 Ill. 600, 187 N. E. 657,

the last Illinois case cited in the Shannon case, the refunds were allowed a claimant who had kept accurate records of each customer's tax payments, and who was willing to refund to the customers such tax. The manner of payment by the customer—whether paid as a separate, distinct item of tax, or as a part of the total price, increased by, but not separated as, a tax—appears to have determined the right of the customer to recovery or non-recovery against the seller under many of the decided cases. Lash's Products Co. v. United States, 278 U. S. 175, 49 S. Ct. 100, 73 L. Ed. 251; Acme-Evans Co. v. Smith, D. C., 13 F. Supp. 356; Heckman & Co. v. I. S. Dawes & Son Co., 56 App. D. C. 213, 12 F. (2d) 154; Christopher v. Hoger & Co., 160 Misc. 21, 289 N. Y. S. 105; Texas Co. v. Harold, 228 Ala. 350, 153 So. 442, 92 A. L. R. 523. It was said in the Shannon case, "Here the appellee's vendees who actually paid the tax are without recourse, both against the commonwealth and their vendor." We do not, of course, intimate whether the customers, in the case at bar, could or could not recover from the plaintiff herein, in case they desired to do so; but at least they would have the benefit of the fact that the payments were separated and paid as a tax.

As shown by authorities cited in the Shannon case, the question of voluntary payment, or payment under protest (Talbott v. United Supply Co., 263 Ky. 95, 91 S. W. (2d) 1002), or compliance with a statute requiring claimant to show that he bore the burden of the tax (United States v. Jefferson Electric Mfg. Co., 291 U. S. 386, 54 S. Ct. 443, 78 L. Ed. 859) are questions frequently determining the right of recovery. Those questions are not involved in the case at bar.

Appellee also cites Adams v. Saunders, 89 Miss. 784, 42 So. 602, 119 Am. St. Rep. 720, 11 Ann. Cas. 327. Saunders, as tax collector, had collected ad valorem taxes which he refused to turn over to the county, claiming he had made proper settlements with the county auditor. He admitted that he had in his possession money he had

collected from the taxpayers, which he had not turned over. The court very properly held that the payments were made to him because demanded virtute officii, while acting under color of his office, and that he held the funds in trust for the county for which he had collected them, and he could not question the right of the state, or other political subdivision, under whose authority he derived his power to act. We have already pointed out that appellant was under no duty to collect the taxes, and no trust relation existed between it and appellee in the case at bar. It did not collect the tax by virtue of any office, or color of office, held by it. Too, the law provides a remedy whereby one erroneously or wrongfully paying ad valorem taxes may obtain a refund of such taxes from the State and its subdivisions.

Turning now to the Mississippi Sales Tax Law of 1932, cc., 90, 91, as reenacted and amended by Ch. 119, Laws of 1934, and Ch. 158, Laws of 1936, and Ch. 113, Laws of 1938, the tax is levied as a privilege, or excise tax, for the right to engage or continue in the designated activities, and is an obligation of the one so engaged in such activity. The administration of the act is placed in a commissioner, who is vested with extensive powers for that purpose, among which is the power to make additional assessments against taxpayers which, when properly made, are prima facie correct against the taxpayer, and shall constitute a lien against the property of the taxpayer. If payment of the assessment is not made within ten days after notice thereof by the commissioner, interest at the rate of 1 per cent. per month, and damages of ten per centum, shall be added; and if the assessment is not paid within ten days after demand therefor by the commissioner, 25 per cent. for the first offense, and 50 per cent. for subsequent offenses, may be added as damages, together with interest at the foregoing rate, but granting unto the taxpayer the right to a hearing and appeals as set out in the act. After it is determined that the tax is due, and the taxpayer has been given ten

days' notice thereof, the commissioner may issue a warrant for the seizure and sale of the property of the taxpayer for such tax, and no injunction shall be granted to restrain the collection of the tax or the enforcement of the act. The taxpayer required to pay the tax is given the right to sue the commissioner for its recovery, and he need not protest against such payment as a precedent right to such recovery. It is, therefore evident that one purpose of the sales tax law was to induce prompt payment to the commissioner, and another purpose was to give the taxpayer so paying the right to sue for its recovery, without the sacrifice, on his part, of any of his rights because he had yielded to the threatening provisions of the law inducing such payment. Appellant was denied the aid of an injunction in resisting the illegal collection. In the Shannon case two of the judges dissented, ". . . on the ground that appellee was entitled either to an injunction or to a recovery of the taxes, and has been denied both." The state is in the position of not being entitled to the money, but having wrongfully demanded and collected it, now asserts that it is under no duty to refund it to appellant. If for no other reason, the possible liability of appellant to make refund to the contributors of the money confers upon appellant a better right thereto than that of the appellee, who has no right to it whatever.

Reversed and judgment here for appellant.

**Griffith, J.**, delivered a dissenting opinion.

We are all in agreement that appellant was not originally liable for the 2 percent taxes; but I am unable to concur in the majority opinion that appellant is entitled to recover from the state the $8,451.47, with interest, which it has heretofore paid into the hands of the Tax Commission. Not a dollar of this money is or ever was the money of appellant. It is admitted that appellant collected it, and every cent of it, from its customers, by

adding to its bills for its ordinary and regular charges, a distinct and separate amount of 2 percent with the distinct statement that it was demanded as a sales tax.

In such a case the principles set forth in Shannon v. Hughes & Co., 270 Ky. 530, 109 S. W. (2d) 1174, wherein there is an elaborate review of the authorities, should be upheld here, which, in brief, is that a party who has paid no money of his own into the state treasury but solely of money wrongfully or mistakenly collected by him from another under the guise or color of taxes, is not entitled to recover it from the state. The doctrine of unjust enrichment is one which applies in such cases against individuals and not against the state; and it is not only a just rule but is one of salutary effect.

The majority opinion seeks to distinguish that case from that now before us on three grounds: First, that in that case the party who collected the taxes from its customers was required by the statute to make the collection, while in a case, such as here in hand, there was no such requirement. But the entire statute in that case was declared to be unconstitutional, wholly void, wherefore it was as if so much waste paper, no law at all, and hence nothing could be required to be done under it. No law there required the collection and none here. But there, as in the present case, it was collected under the guise or pretense or color of a right so to do; the customers paid it without protest in response to the demand, and this is what constitutes the substance which forms the foundation of the rule. What difference can it make that the collector had no actual right when he collected under the guise or pretense or color of such a right? At least it was not his money which he collected, and having no right to collect it, he has no right to get it back from the state for whom it was collected from, and paid at the time by, the contributors of the fund.

As a second ground for the alleged distinction, it is said that in the Shannon case it was not shown that the tax was collected as a distinct and separate charge as

such, while in the present case it was collected as a separate and distinct charge and specifically as state taxes charged against the customer as such. Instead of this furnishing a basis for a distinction, it strengthens the present case in favor of the state as compared with the Shannon case.

The addition to the bills of the customers in the present case distinctly stated that it was a 2 percent tax for the state; the customers paid it with that understanding and that appellant to whom it was paid would be a mere conduit or trustee through whom it would reach the state treasury. They were under no sort of compulsion; they were subject to no return to, or demand therefor by, the Tax Commissioner and to no penalties for refusal of payment. So far as they were concerned, every legal remedy, without restriction or qualification, was open to them. And although they paid it under a mistake of law that they were liable therefor, nevertheless, so far as they were concerned, this did not alter the character thereof as voluntary payments, 61 C. J., p. 991, sec. 1270, they paid the tax, they were the actual taxpayers, and as held in Mississippi Cent. R. Co. v. City of Hattiesburg, 163 Miss. 311, 316, 141 So. 897, when so voluntarily paid by them it is analogous to a gift, whereby their title therein became extinguished and that of the state thereto became complete. Had they themselves voluntarily delivered or paid it to some fund in the state treasury, being under no compulsion or penalty, they could not have recovered it back; and the party into whose hands it was paid by them as a conduit for transmittal to the state can be in no better position.

And as a third ground reference is made to cases in which the claimant kept an accurate account of each customer's tax payments, and with the design and definitely disclosed purpose to refund the collections to the customers. Nothing of this sort is shown or is even intimated in the present record. Not a word has been said in the record or even in claimant's brief that it enter-

tains any such purpose, and so far as we know there is none such.

The pith of the majority opinion is embraced in its concluding sentence: "If for no other reason, the possible liability of appellant to make refund to the contributors of the money confers upon appellant a better right thereto than that of appellee, who has no right to it whatever." This same comprehensive statement could be made in every case involving the doctrine of unjust enrichment, and by it, if adhered to in future cases, the entire rule is thrown out of the window, so far as this state is concerned. In every such case there would be the possibility of a demand by the contributors; but nothing is said or intimated in this case that, were the contributors to complain, they would not be met at the threshold by appellant with the answer that their contributions were voluntarily made and were, therefore, not recoverable, as to which see such cases as Union Land, etc., Co. v. Pearl River County, 141 Miss. 131, 106 So. 277; Schmittler v. Sunflower County, 156 Miss. 227, 125 So. 534, 126 So. 39; Mississippi Cent. R. Co. v. City of Hattiesburg, supra, to mention only a few to that effect.

In my judgment the majority holding is not only unsound, but is capable of being put to mischievous uses to their own great profit by those who, under color of right, make and will continue to make illegitimate demands upon others with whom they deal in the ever-increasing complications of new tax fields and new revenue devices.

**Anderson, J.**, concurs in this dissent.