Cook, Commissioner of Revenues, *v.* Sears-Roebuck & Company.

4-8253                                            206 S. W. 2d 20

Opinion delivered November 17, 1947.

Rehearing denied December 22, 1947.

*O. T. Ward,* for appellant.

*House, Moses & Holmes* and *W. H. Jewell,* for appellee.

ED. F. McFADDIN, Justice. In this appeal two questions are presented: first, whether the Arkansas Gross Receipts Tax (as levied by Act 386 of 1941) is applicable to the transactions described in the stipulations in this case; and, second, whether appellee Sears-Roebuck & Company is prevented, by its conduct, from obtaining an answer to the first question. We decide only the second question; that is, we hold that Sears-Roebuck & Company, by its conduct, is prevented from obtaining an answer to the first question as above stated.

Otho A. Cook (hereinafter referred to as "appellant") is, and was at all times hereinafter mentioned, Commissioner of Revenues of the State of Arkansas; and appellee Sears-Roebuck & Company (hereinafter referred to as "Sears") is, and was at all times hereinafter mentioned, a large merchandising establishment with retail stores in Little Rock, Hot Springs and Fort Smith. In each retail store there was a "mail order desk"[1] where the consumer could examine the catalogue for items not found in the retail store. In addition to the three retail stores, Sears also had "mail order offices"[1] in Pine Bluff, Camden, Jonesboro, El Dorado and Helena. These "mail order offices" had no merchandise on hand for sale, but had only Sears catalogues from which items could be ordered.

At either the mail order desk in any of the three retail stores, or at the mail order office in any of the other five cities mentioned, the procedure was the same: the prospective customer could examine the catalogues and order from the Memphis, Tennessee, or the Kansas City, Missouri, store of Sears any item found in the catalogues. Such an order was subject to acceptance or rejection in Memphis or Kansas City, and was shipped by carrier to the purchaser. The method of payment varied. Prices listed in the catalogue were f.o.b. the point of shipment. Were these sales thus made through such mail order desk or mail order office "sales made in Arkansas," so

---

[1] In using the terms "mail order desk" and "mail order office," we follow Sears' designation, and without any intimation that such designation indicates our conclusions as to the effect of the method of doing business.

as to be taxable transactions under our Gross Receipts
Tax Act 386 of 1941 (hereinafter called the "Tax Act")?
That is the original question; and the one that led to this
litigation.

Prior to 1945, Sears had regularly collected, and re-
mitted to appellant, as provided by the said Tax Act, the
gross receipts tax arising from all sales made at the mail
order desks and mail order offices . Beginning in Janu-
ary, 1945, Sears continued to collect the tax from its
customers, but refused to remit to appellant any taxes
so collected. In July, 1945, appellant made an assessment
against Sears for $2,688.44 for the tax on sales made by
Sears at its mail order desks and mail order offices in
Arkansas during the months of January and February,
1945. After the said assessment, Sears undertook to fol-
low the procedure of § 10 of the Tax Act,[2] in that Sears:
(a) seasonably protested the assessment; (b) had a hear-
ing before the Commissioner; and (c) from the order of

---

[2] Section 10 of Act 386 of 1941 is copied, in part, for convenient
reference:

"If the Commissioner, after examining the return of any taxpayer
or upon the failure of any taxpayer to file a return, determines that
the taxpayer is liable to the State for any taxes specified under this
Act, he shall give such taxpayer notice of his intention to collect such
assessment by issuing a certificate of indebtedness as hereinafter pro-
vided, or by any other legal means. Such taxpayer may, if he so
desires and duly notifies the Commissioner in writing within twenty
(20) days after receipt of such notice of intention, demand a hearing
on the question of the issuance of such certificate of indebtedness.
Thereupon the Commissioner shall set a time and place for hearing
and shall give the taxpayer reasonable notice thereof. The taxpayer
shall be entitled to appear before the Commissioner and be represented
by counsel and present testimony and argument. After the hearing
the Commissioner shall render his decision in writing and by order
establish any deficiency or tax found by him to be due and payable.
If any taxpayer is aggrieved by any decision of the Commissioner he
shall be required to pay the amount of taxes, interest and/or penalties
found due by the Commissioner and after the payment of such taxes,
interest and/or penalties, he shall be permitted to appeal within a
period of thirty (30) days after such decision to the Chancery Court
of Pulaski County where the matter shall be tried de novo. An appeal
shall also lie from the Pulaski Chancery Court to the Supreme Court
of Arkansas as in other cases now provided by law.

"In the event any taxpayer is found by such court or courts enti-
tled to recover any sums paid pursuant to the orders of the Commis-
sioner as hereinbefore provided, such sums shall be refunded to him
from a fund to be created by the Commissioner out of monies col-
lected under this Act, to be known as the 'Special Gross Receipts
Refund Account,' to be maintained for such purposes, which account
shall not exceed the sum of $10,000."

the Commissioner sustaining the assessment, seasonably filed its appeal in the Pulaski Chancery Court. In its chancery pleading, Sears said:

"Sears-Roebuck & Company now desires that an appeal be granted it from the order of the said Commissioner of Revenues as provided in § 10 of Act 386 of the Acts of the General Assembly of Arkansas for 1941, and that the legality of the assessment hereinbefore mentioned be determined by this court."

Sears failed to completely follow the procedure of § 10, in that it failed to pay the tax; but, by reason of the stipulation hereinafter to be mentioned, we treat the tax as paid, and this as a suit for refund. Appellant by answer claimed that the sales of Sears to its customers at the mail order offices and mail order desks were consummated in Arkansas, and that the assessment was correct.

With the issue thus joined, appellant and Sears entered into a stipulation reciting the method of business, as hereinbefore explained, and also containing the two paragraphs, as follows:

"Sears-Roebuck & Company was duly licensed by the Revenue Department of the State of Arkansas under the Gross Receipts Tax Law and has been issued permit No. 76-190-23. This permit is a blanket permit for the Company in Arkansas and retail stores in Little Rock, Hot Springs and Fort Smith have been issued subpermits.

"Sears-Roebuck & Company has been collecting the Arkansas Gross Receipts Tax from the customers placing orders through order desks and order offices. Prior to 1945, the tax was remitted to the State of Arkansas on these orders. Since that time, the amounts collected have been held by Sears-Roebuck & Company pending the ultimate outcome of this suit."

The chancery court entered a decree cancelling the assessment made by the Commissioner; and from that decree, there is this appeal.

312

I. *The Status of the Suit.* At the outset, we state that we treat this case as though Sears had paid the $2,688.44 and penalty, and was here seeking to recover the same. We do this because Sears said that it was proceeding under § 10 of the Tax Act, and that section expressly requires that the money must be paid as a prerequisite to an appeal to the chancery court. Whether appellant exceeded his authority, in failing to require Sears to make actual payments of such money, we need not now decide; but we treat this case as though Sears had fulfilled all the essentials required of it under § 10. We do this since Sears, in invoking for its benefit § 10 of the Tax Act, also necessarily assumed the concomitant burdens of that section.

II. *Unjust Enrichment.* We have previously copied two paragraphs of the stipulation; and these show (1) that Sears obtained a permit from the State to collect the sales tax from Sears' customers; and (2) that, acting under the authority and power of that permit, Sears actually collected the sales tax from the purchasers in the transactions here involved. Whose money is it now? Either, it belongs to the State, or it belongs to the persons who paid the taxes to Sears. At all events, it is not Sears' money. How, then, can Sears be heard in this effort to recover the money that it has paid? Or, if we should treat the money as still in the hands of Sears, how can Sears be heard in its effort to keep the money, which it collected as an agent of the State? The propounding of the questions suggests the answers that must be made in a court of equity. To allow Sears to recover this money, or to retain it, is to disregard completely the entire doctrine against unjust enrichment.

In the American Law Institute's Restatement of the Law of Restitution, the following appears in § 1-A, as a fair statement of what is meant by unjust enrichment: [3] "A person is unjustly enriched if the retention of the benefit would be unjust."

---

[3] For other cases construing these words, see "Unjust Enrichment" in Words and Phrases, Permanent Edition, Vol. 43, p. 272, and also in the pocket part of the same volume.

A well-considered case, applying the rule against unjust enrichment in a situation similar to the one in the case at bar, is *Shannon* v. *Hughes & Co.*, 270 Ky. 530, 109 S. W. 2d 1174. There, the State of Kentucky had undertaken to enact a retail sales tax of seven cents per quart of ice cream. The Act had provided that the person or firm making the sale should collect the tax and remit the same to the State; and Hughes & Co., as the seller of ice cream, had collected the tax from its customers, and had remitted such collections to the State. Later, in an action by other parties, the tax had been declared void. Then Hughes & Co. brought its suit to recover the money which it had paid to the State. The Kentucky Court of Appeals, in denying Hughes & Co. any relief, applied the doctrine of unjust enrichment. We quote:

"The proof shows that appellee added the tax to the price charged for its products, and thus collected the tax from its vendees and shifted to them the economic burden of its imposition. . . . In *U. S.* v. *Jefferson Electric Manufacturing Company*, 291 U. S. 386, 54 S. Ct. 443, 78 L. Ed. 859, the Supreme Court sanctioned the refusal to refund illegal taxes to one who, although he paid them, did not bear their burden. It is true that the court had under consideration in that case an act of Congress which required the claimant to prove that he had not shifted the burden of the tax as a condition precedent to his recovery. This was a legislative recognition of the principle that a taxpayer who is allowed the refund of a tax, the economic burden of which has been borne by another, has been unjustly enriched. The doctrine of unjust enrichment has received a wide application in tax cases even without the aid of a statute. The Supreme Court of Illinois in a number of decisions denied recovery of taxes paid under an unconstitutional statute levying a tax of two cents a gallon on gasoline, where it appeared that the claimant had collected the tax from his vendees, on the ground that recovery by the claimant would not inure to the benefit of the vendees. *Richardson Lubricating Company* v. *Kinney*, 337 Ill. 122, 168 N. E. 886; *Standard Oil Company* v. *Bollinger*, 348 Ill. 82, 180 N. E. 396.

"We are of the opinion that, under the circumstances herein outlined, the sellers of ice cream who paid the tax into the state treasury should show that the amounts they seek to recover do not include collections made by them from their customers pursuant to the provisions of § 2 of the act. To hold otherwise would be manifestly unjust and would result in the unjust enrichment of the one seeking to recover the tax from the commonwealth and supported by no outlay on his part."

In the case at bar, it is admitted by Sears that it would be entirely impracticable for Sears to attempt to return to the customers the sales tax money collected in this case. Such return is not even contemplated by Sears; the fact that the customers paid the tax is shown by the stipulation previously copied. Therefore, Sears must be denied recovery, unless it can remove itself from the rule against unjust enrichment.

III. *The Status of Sears.* In such effort to remove itself from the rule against unjust enrichment, Sears says it is the "real taxpayer," and therefore entitled to the money as its own.

Sears argues: (a) that the Tax Act levies the tax on Sears; (b) that the assessment is against Sears as a taxpayer—and not as a tax collector; and (c) that the fact, that Sears added some amount approximating the tax to the prices of the articles sold, is immaterial to the issues here. In making these contentions, learned counsel for appellee, both in the oral argument and supplemental brief, has made a detailed comparison of one of our previous sales tax acts (Act 233 of 1935) with the present Gross Receipts Tax Act. The purpose of such comparison was an attempt to distinguish the status of Sears in the case at bar from the status of the merchant who collected the sales tax in *Wiseman* v. *Phillips,* 191 Ark. 63, 84 S. W. 2d 191, because, of such merchant, we said: "The merchant is not taxed. He is a tax collector. The tax is required of the purchaser, and the merchant must collect and account for it."

In *Mann* v. *McCarroll,* 198 Ark. 628, 130 S. W. 2d 721, we had under consideration the Arkansas Retail Sales

Act of 1937 (being Act 154 of 1937), and we there also referred to the seller collecting the tax as being the agent of the State.

We cannot, and do not, agree with Sears' contentions in this regard. In accepting a permit from the State under the present Tax Act, and in collecting the tax from the customers in the case at bar, Sears became a tax collector for the State, just as the merchant did in the reported case of *Wiseman* v. *Phillips, supra.* We have repeatedly held that the present Gross Receipts Tax Act is a sales tax act. *McLeod* v. *Dilworth,* 205 Ark. 780, 171 S. W. 2d 62; and *U-Drive-'em Service Co.* v. *Hardin,* 205 Ark. 501, 169 S. W. 2d 584. Furthermore, we point out provisions of the present Tax Act, which point unerringly to the status of Sears as a tax collector under the Act (Act 386 of 1941):

Section 2g says: "The term 'seller' shall mean and include every person making a sale in an established business as herein defined." Section 2i says: "The term 'consumer' or 'user' means the person to whom the taxable sale is made, or to whom taxable services are furnished." Section 2c says: "The term 'taxpayer' means any person liable to remit a tax hereunder or to make a report for the purpose of claiming any exemptions from payment of taxes levied by this Act." These definitions of *seller, consumer* and *taxpayer* show that the taxpayer is the one who makes the report, as distinct from the seller and the consumer: so Sears occupies the position of a person making a report, and also the position of the person making the sale.

Section 3 of the Act says, in part: "There is hereby levied an excise tax of two (2%) per centum upon the gross proceeds or gross receipts derived from all sales to any person subsequent to the effective date of this Act. . . ." Thus, the tax is not levied on the seller or the consumer, but is levied on the transaction, that is, the sale itself.

Section 7 of the Act is most convincing. It says: "The seller, or person furnishing such taxable service,

shall collect the tax levied hereby from the purchaser.''
Thus, the Act specifically states that Sears shall collect
the tax from the consumer.

Section 12 of the Act concerns permits, and says:
''It shall be unlawful for any taxpayer to engage in or
transact business within this State unless a written per-
mit or permits shall have been issued to him. Every such
taxpayer desiring to engage in or conduct a business
within this State shall file with the Commissioner of Rev-
enues an application for a permit to conduct such busi-
ness, setting forth such information as the Commissioner
may require. . . . Any taxpayer who engages in
business, subject to the provisions of this section with-
out a permit or permits, or after a permit has been sus-
pended, shall be subject to penalties as hereinafter pro-
vided.'' It would have been unlawful for Sears to have
undertaken to collect the tax without a permit; and Sears
would have violated the law if it had not collected the
tax from the consumer.

In short, a study of our tax Act demonstrates that
Sears is a ''taxpayer'' only in the sense that it collects
and remits the tax and makes a report thereof; but is
not a ''taxpayer'' in the sense of being the initial payer
of the tax. That burden—under § 7 of the Act—falls on
the party who purchases the merchandise from Sears,
and Sears only collects and remits the tax to the State
with a report.

Sears makes the contention that the Commissioner,
acting under § 7 of the Tax Act, has adopted a bracket
system for determining the collection of the tax; and that,
under § 14, the taxpayer (if prompt) is only required to
remit 98 per cent. of the tax due—being allowed to retain
the balance as remuneration for bookkeeping, ''filing re-
ports, collecting the tax and remitting it when due under
this Act.'' Sears cites these provisions in its effort to
show that the tax is actually paid by Sears. But these
provisions show that Sears is really receiving compensa-
tion for ''collecting the tax and remitting.'' They rein-
force our conclusion that Sears is a ''tax collector,'' and
that Sears, by its conduct as hereinbefore detailed, is

prevented from questioning the State's right to the money.

Cases from other jurisdictions are in accord with the views herein stated. We refer especially to *Spencer* v. *Consumers' Oil Co.*, 115 Conn. 554, 162 Atl. 23; *Wade* v. *State*, 97 Colo. 52, 47 Pac. 2d 412; and *Kesbec* v. *McGoldrick*, 278 N. Y. 293, 16 N. E. 2d 288, 119 A. L. R. 536.

In *Spencer* v. *Consumers' Oil Co., supra*, the oil company, being under a license from the State of Connecticut, had collected from purchasers a tax of two cents per gallon on gasoline. The oil company then claimed that the tax was illegal, and refused to remit to the State the amount collected. In sustaining the State's right to recover the money from the oil company, the Supreme Court of Errors of Connecticut said:

" . . . this corporation invoked certain of our state laws to establish itself as a licensed distributor of gasoline, conducted a large business under that franchise, collected its own price in full and in addition a tax for the State of Connecticut of two cents on every gallon sold, as provided by this law, and now refuses to pay over to the State the tax so collected on the ground that the laws which licensed it to sell gasoline, and in addition to the regular sale price retained by it to collect for the State of Connecticut a tax of two cents a gallon, were invalid and void and that therefore it can keep for its own use large sums of tax money which admittedly do not belong to it. The mere statement of such a claim constitutes a fair answer and should suffice to defeat it. . . .

"The defendant accepted a license to do business as a distributor under the act in question . . . ; it acted in collecting that money from consumers under the terms of the act; and made monthly reports of such collections to the commissioner as required by the act. It cannot, having acted under the statute to the detriment of others, now claim that the statute was unconstitutional and void,

"In the present case the defendant has in good conscience no right to retain this money and is charged with a heavy moral obligation to make the payment."

In *Wade* v. *State, supra,* the Denver Oil Company had applied to the State of Colorado for a license to operate as a distributor of motor fuel, and had received such license upon making bond with sureties. One of the requirements of such licensee was that it collect from the purchaser the tax of four cents per gallon on all motor fuel sold by such distributor. The oil company failed to pay the tax; and when the State sued, the oil company sought to attack the constitutionality of the taxing statute. In sustaining the State's right to recover, the Supreme Court of Colorado said:

"In their attack upon the constitutionality of the act imposing the tax, the oil company, as distributor, or its sureties, are as strangers to the question. They would receive no benefit, neither would they suffer any injury by or through a holding of the validity or invalidity of the act. In the tax collected by them, they could acquire no interest requisite to a right to successfully object to the imposition of the tax. That requisite obtains to one who first protests and then pays the tax. Defendant sought and obtained a privilege under the statute, claimed existence thereunder, as a distributor, and now attacks the law that fostered it. As against purchasers, it enforced the statute with impunity. We fail to conceive any equitable principle which would permit one to repudiate a statute, after sanctioning it, by applying for, and receiving, a privilege thereunder, especially where, under the faith of a bonded obligation, he has been allowed to collect a tax, which, although claiming the act to be unlawful, he thereafter seeks to retain."

In *Kesbec* v. *McGoldrick, supra,* the oil company, acting under a permit from the city, had collected a gasoline sales tax, a portion of which was later held to be illegal. The oil company sought to recover, but the Court of Appeals of New York denied such a recovery, saying:

"Petitioner (*i. e.,* oil company) got this fund on its declaration that its customers were paying a tax for

transmittal to the city treasury for unemployment relief. The valid general authority to the petitioner to collect the city sales tax was disclosed. Petitioner was not bound to ascertain whether the Comptroller's regulations went beyond the limitations of law. The sales tax was not imposed on the vendor. It fell upon the purchaser . . ."

It will be observed that in the Kentucky case and the New York case there had been a previous adjudication of the illegality of the tax involved; and the court then set about to determine who was entitled to the money previously collected. Of course, in the case now before us, there has never been any adjudication that the tax was illegal, and nothing herein is to be taken as the slightest indication in that regard. The cases are cited and quoted from to sustain the point that in no event can Sears hold the tax money it has collected from its customers.

Among the cases cited by Sears is *State of Montana v. Sunburst Refining Co.*, 76 Mont. 472, 248 Pac. 186, 46 A. L. R. 969, claimed to be a case holding that the State cannot recover from a dealer the amount the dealer collected under a sales tax act subsequently held invalid. But we point out that the Montana Sales Tax Act was different from the Tax Act here involved. The Montana court recognized such difference in this language: "The law does not impose any tax upon the consumer, although in practice it may be that the distributor or dealer passes it on to him by advancing the price of the product sold. The law did not constitute the defendant an officer or agent to collect a tax from its customers."

There are annotations in 93 A. L. R. 1485 and 119 A. L. R. 543 on the topic, "Right as between dealer or manufacturer and taxing authorities in respect of taxes and license fees illegally received or collected." In these annotations there are reviewed: (1) cases which hold in accordance with the views herein expressed; (2) cases which hold *contra*; and (3) cases following federal statutes concerning suits for refund. Without reviewing all these cases, we reach the conclusion that Sears' status under our Tax Act is that of a tax collector, and that the

rule against unjust enrichment is a bar to Sears' effort to recover (or retain) the tax which Sears collected from its customers under this Tax Act. Sears sought to assert in this case that the Arkansas Gross Receipts Tax was inapplicable to the sales that Sears made at its mail order desks and mail order offices. That was the original point; but we have never reached that question for decision, because Sears, by its conduct, is prevented from obtaining an answer to that question in the case at bar.

The decree of the chancery court is reversed, and judgment entered here sustaining the assessment made by the Commissioner against Sears.